Kathryn H. MARTIREZ,
Plaintiff-Appellant,

v.

MEHARRY MEDICAL COLLEGE,
Defendant-Appellee.

Supreme Court of Tennessee,
at Nashville.

July 16, 1984.

Michael P. Williamson, Nashville, for plaintiff-appellant.

William C. Moody, Nashville, for defendant-appellee.

## OPINION

BROCK, Justice.

The plaintiff, while working as a nurse for the defendant, sustained injuries by accident arising out of and in the course of her employment when she was attacked by a large black man as she was in the process of "clocking out" after completing her duties on the 3:00 p.m. until 11:00 p.m. shift on January 2, 1980. The plaintiff was admitted to the defendant hospital immediately following the attack where she received treatment for the ensuing two weeks. Thereafter, a dispute arose between the parties respecting the extent of benefits due the plaintiff under the worker's com-

pensation laws and she filed suit to enforce her rights. The compensability of the attack has never been questioned. The trial court awarded benefits for temporary total disability from the date of the assault through April 21, 1980, and benefits for medical treatment through April 21, 1980, but denied any benefits for medical expenses or disability after April 21, 1980.

The plaintiff has appealed, asserting that she is entitled to receive psychiatric treatment and that she has sustained a permanent partial disability for which she is entitled to benefits. The defendant has also appealed contending that the trial court erred in awarding temporary total disability benefits and medical expenses accruing after February 26, 1980, the date on which the employer ceased to pay worker's compensation benefits to the plaintiff because of its inability to receive a medical report from the physician who attended the plaintiff and treated her injuries from the beginning, but who was employed by the defendant.

The assault to which the plaintiff was subjected was a brutal one although it did not result in any broken bones. She sustained severe bruising around her neck, eyes and arms and other parts of her body. She was hospitalized for two weeks and was treated by Dr. Gardiner and by other physicians to which she was referred by Dr. Gardiner. For several months following the assault she suffered from dizziness and ringing in her ears. Dr. Gardiner was employed by the defendant hospital and was on duty when plaintiff entered the hospital as a patient following the assault; he continued to treat her during her stay in the hospital.

The assault caused the plaintiff, a young immigrant from the Phillipines, to suffer extreme anxiety and for this reason she was referred to Dr. Zillur Athar, a psychiatrist, whose testimony by deposition was the only medical evidence submitted to the trial court. Dr. Athar testified that he first saw and treated the plaintiff on January 24, 1980, at which time she was totally disabled from the injuries suffered in the assault. Thereafter, he saw and treated the plaintiff on January 31, February 14, and April 21, 1980. He testified that petitioner was totally disabled through April 21, 1980. After that date he did not see the plaintiff until April 19, 1982, just prior to the trial of this cause in the trial court. On the last occasion he saw the plaintiff and talked with her for a period of about 15 minutes. He stated that following his last observation on April 19, 1982, that the plaintiff is now stable and seems to be progressing very well but that she still suffers from a traumatic neurosis. He testified that the only treatment for her condition is that she "go through exploratory psychotherapy" for the purpose of "reconstruction." We quote from Dr. Athar's testimony:

"I would have to say it is a fracture of her ego. She has it so much the id has fractured. There has to be some exploratory and some reconstructive psychotherapy. To do that any psychiatrist would have to see her very frequently, at least once a week, maybe two or three times a week, and how long it takes I can't tell you. It depends on who she sees, how they get along and how things work out for them. Psychotherapy is the only treatment for this type of problem. There is no medicine for it. You don't have any chemotherapy.

\*      \*      \*      \*      \*      \*

"Q. There is no question she is able to work now?

"A. That's right. It looks like she is doing okay.

\*      \*      \*      \*      \*      \*

"Q. Doctor, what problems if any would she have working as a nurse because of her psychological problems?

"A. Facing black men mostly. And facing any situation where she has to deal with by herself. It hampers her not only in her job but also in her day to day life. If she is on duty alone someplace, which is not

in this place, there—because there is always another nurse working."

The record discloses that following the assault upon the plaintiff she successfully passed the examinations to become a registered nurse in Tennessee and also in Illinois and that she now practices as a registered nurse in Illinois in a pediatrics ward of a Chicago hospital, earning three or four times as much as she earned in her employment at the time of the assault upon her.

The applicable statutory provision is as follows:

"For not exceeding three (3) years after notice of injury, the employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required; .... " T.C.A., § 50–1004 (now T.C.A., § 50–6–204(a)(1)).

The trial judge did not make a finding of fact but apparently he concluded that the psychotherapy recommended by Dr. Athar was not "reasonably required" by the plaintiff, because in his final decree he stated, in part,

"... that it further appeared to the court that the plaintiff is not entitled to compensation for any future medical expenses or permanent partial disability benefits ...."

■ The trial court's conclusion that the plaintiff's condition does not "reasonably require" the psychotherapy as suggested by Dr. Athar is not without evidentiary support in the record. Without such psychotherapy, during the period from April 21, 1980, to April 19, 1982, the date of Dr. Athar's brief conversation with the plaintiff prior to giving his deposition, it appears that the plaintiff has made a good recovery from her injuries, having become a registered nurse both in Tennessee and Illinois and being able to practice her profession as a registered nurse in a Chicago

hospital. The fact that a certain course of treatment is recommended by a physician does not, *ipso facto*, render the employer liable to provide such treatment; the court finds that such a course of treatment is not "reasonably required," considering all the relevant evidence. *Wisconsin Tel. Co. v. Industrial Commission*, 263 Wis. 380, 57 N.W.2d 334 (1953).

■ The fact that Dr. Athar's examination of plaintiff on April 19, 1982, lasted no more than 15 to 20 minutes and that he had not seen her since April 21, 1980, were also factors which the trial judge could consider in determining how much weight to give the testimony of Dr. Athar in determining whether psychotherapy was "reasonably required" within the meaning of the statute. We find no error in the failure of the trial court to provide for such psychotherapy treatment.

■ Although the record shows that the plaintiff continues to suffer from some of the after effects of the vicious assault upon her, it fails to show that she sustained a permanent disability within the meaning of the worker's compensation laws. Therefore, the trial court did not err in failing to find any permanent partial disability as a result of this attack. *See, Minton v. Leonard*, 219 Tenn. 642, 412 S.W.2d 886 (1967).

■ Likewise, the record fails to support the contention of the defendant that plaintiff's right to medical and disability benefits for the period from February 26, 1980, through April 21, 1980, should be held to have been suspended by reason of the failure of Dr. Gardiner, her treating physician, to timely furnish a report of his treatment and the plaintiff's injuries. This report was requested on January 11, 1980, and was not received until June 20, 1980. Approximately six weeks following the assault upon the plaintiff the insuror of the employer wrote to the plaintiff and informed her of Dr. Gardiner's failure to furnish the medical report and directed that she cease being treated by Dr. Gardiner and instead was to be treated by one of three physicians whose names the insu-

ror supplied to her. She responded that she would not cease being treated by Dr. Gardiner, whereupon, the insuror notified her that her worker's compensation benefits were being terminated as of February 26, 1980.

The statute, T.C.A., § 50-1004, required that

"... within thirty (30) days after examination or treatment of an employee, a physician shall, upon request, furnish to the employer or to the employer's insuror and to the employee or his attorney a complete medical report as to the claimed injury, its effect upon the employee, the medical treatment prescribed, an estimate of the duration of required hospitalization, if any, and an itemized statement of charges for medical services to date."

The failure of Dr. Gardiner to furnish the requested medical report cannot in any way be blamed on the plaintiff. She was in no way responsible for his conduct; he was an employee of the defendant-employer; the plaintiff did not object to his giving the required report and was in no way responsible for his failure to do so. Therefore, the trial court did not err in awarding benefits for the period between February 24, 1980, and April 21, 1980.

Finding no error in the decree of the trial court, we affirm the same and tax costs against the plaintiff and the defendant, equally.

FONES, HARBISON and DROWOTA, JJ., and RUSSELL, Special Justice, concur.