**Robert A. WILHELM,**
**Plaintiff-Appellee,**

v.

**KERN'S, INC., Brown & Greer, d/b/a Kern's Bakery and the Continental Insurance Company, Defendants-Appellants.**

Supreme Court of Tennessee,
at Knoxville.

June 30, 1986.

Roy P. Neuenschwander, James E. Fogelsong, Knoxville, for plaintiff-appellee.

Robert W. Knolton, McNees, Lain, Roe & Knolton, Oak Ridge, for defendants-appellants.

## OPINION

PER CURIAM.

This is a dispute over worker's compensation medical benefits. On a previous appeal to this Court, the decree of the chancellor holding that the plaintiff employee was entitled to benefits for permanent total disability and for medical expenses was affirmed, and the cause was remanded for appropriate proceedings in the trial court. Following the remand, a number of disputes arose between the parties concerning the compensability of certain expenses incurred by the plaintiff employee in obtaining treatment for his schizophrenic condition. This schizophrenic condition has been finally adjudged to be an injury by accident arising out of and in the course of his employment.

For a time, the plaintiff-employee was a resident of the Mountaineer Rest Home in Gatlinburg, Tennessee receiving treatment for his condition and that expense is not disputed. However, late in 1984, the plaintiff became "bored" with his existence in the Gatlinburg facility and requested his physician, Dr. Robert G. Demers, a psychiatrist, to approve plaintiff's "relocation" to

a suitable facility near Washington, D.C., an area in which the plaintiff had once lived for a time as a student at George Washington University. Doctor Demers considered such a relocation to be good for the "psychological well-being" of his patient and therefore approved the idea.

Accordingly, the plaintiff, accompanied by Suzanne McNabb, a social worker, made a trip to Washington in mid-December, 1984 to locate a suitable "half-way house" type facility and to arrange for the plaintiff to live in the residence of Judith F. Meade and her husband, who were psychiatric social workers. The plaintiff agreed with the Meades that he would pay them twelve hundred dollars per month for their services in providing shelter, food, laundry and supervision of his taking of medication prescribed by his physician. The plaintiff then came back to Gatlinburg and Knoxville but almost immediately returned to the Meades' home in Falls Church, Virginia.

These two trips between Gatlinburg and the Washington area resulted in expenses of $455.36 for the first trip, including the services of a driver, $347.95 expenses for the second trip and a $436 expense for temporary lodging at the Towers Hotel in Alexandria, Virginia on or about December 14, 1984. These three items will be hereinafter referred to as the travel expenses. The plaintiff also paid a fee of $308.71 to Suzanne McNabb, the social worker who assisted in "relocating" him to the residence of the Meades near Washington.

The defendants have offered no evidence; the only evidence in the record is that offered by the plaintiff consisting primarily of the testimony of Dr. Demers, the plaintiff's treating physician. The chancellor was of the opinion that the evidence produced by the plaintiff, being unrebutted in any way by the defendants, was conclusive and that it left him no alternative but to find that the disputed expenses were proper medical and nursing expenses for which the plaintiff was entitled to reimbursement under T.C.A. § 50-6-204.

The applicable statutory language is as follows:

50-6-204. Medical attendance and hospitalization—Reports—Physical examinations.—(a)(1) The employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, including prescription eyeglasses and eye wear, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required...."

The determination whether or not a disputed item of medical expense is compensable under the Worker's Compensation Act depends primarily on the evidence of medical experts that the service for which the expense was incurred was one of those enumerated in the above-quoted statute, and was "reasonably required." However, the fact that a certain course of treatment is recommended by a physician does not, ipso facto, render the employer liable to provide such treatment; the court may conclude from all of the evidence that the recommended course of treatment was not "reasonably required." *Martirez v. Meharry Medical College*, Tenn., 673 S.W.2d 141 (1984).

In order for travel expenses to be compensable under the Act, we conclude that the evidence must show that the travel is "reasonably required" as being therapeutic in itself or that it is necessary to enable the employee to acquire a "reasonably required" medical, surgical, dental or nursing service. In the instant case, although the testimony of Dr. Demers on behalf of the plaintiff is undisputed, we conclude that the travel expenses incurred in "relocating" the plaintiff to a "half-way house" type facility near Washington, D.C. have not been shown to be reasonably required since the only reason given for his leaving the Gatlinburg Mountaineer Rest Home was that he was "bored" and desired to move to another section of the country. In our opinion the expense of this move should be borne by the plaintiff as a mere personal expense.

For the same reasons, we also conclude that the expense in employing Suzanne McNabb as a social worker to assist the plaintiff in locating a suitable "halfway house" facility near Washington, D.C. should not be borne by the employer. If the move to the Washington area had been reasonably required, her services in selecting a proper facility may well have been necessary; but we have concluded that the "relocation" itself was not reasonably required.

With respect to the charges of Judith F. Meade and her husband for services rendered in looking after the plaintiff in their home, we find the following evidence in the record to support the position of the plaintiff and the chancellor.

Doctor Demers testified:

"[the plaintiff] ... faces the rest of his life in a rest home or half-way house care.

Q. Is Mr. Wilhelm's present lodging considered as hospitalization or institutionalization for his psychiatric condition?

A. His half-way environment coupled with out patient psychopharmacology and psychotherapy is the least restrictive and least expensive type of institutionalization and treatment for his psychiatric condition.

\* \* \* \* \* \*

Q. Please describe in detail what is meant by half-way house concerning any treatment of Mr. Wilhelm, and break down into categories the services provided at a half-way house.

A. His psychological and psychiatric care requires control, guidance and supervision and his lodging, meal selection, nutrition, personal care, personal hygiene and the taking and administering of medications, and the continued supportive assistance in accordance with proper outpatient psychotherapy treatment and care. These medical expenses are the psychiatric expenses necessary for the care and treatment and stabilization of Mr. Wilhelm.

\* \* \* \* \* \*

Q. Do you feel that the charge of Judith F. Meade for lodging of Mr. Meade, or any portion of it, to be a 'medical expense?' If so, please explain your reasons therefor.

A. Yes, I feel all of it is needed for his proper psychiatric care and treatment."

In our opinion the foregoing evidence by Dr. Demers supports the finding of the chancellor that the twelve hundred dollars per month charged by the Meades for the "half-way house" care of the plaintiff, standing unrebutted as it does, supports the conclusion of the chancellor that it should be compensated as a medical or nursing expense. Accordingly, we affirm the decree of the chancellor respecting the twelve hundred dollars per month charge by the Meades.

The plaintiff-appellee has requested that we determine this appeal to have been frivolous and accordingly to award him damages; however, we conclude that the appeal was not frivolous and decline to award such damages.

The decree of the chancery court is modified as herein directed and this cause is remanded to that court for such future proceedings as may be necessary. Costs incurred on appeal are taxed against the defendants-appellants.