Christopher J. CORCORAN,
Plaintiff–Appellant,

v.

FOSTER AUTO GMC, INC., a/k/a Foster Auto World, and Orion Group, Inc., Defendants–Appellees.

Supreme Court of Tennessee,
at Jackson.

Feb. 1, 1988.
Rehearing Denied March 7, 1988.

Edwin Dean White, III, Farris, Hancock, Gilman, Branan & Hellen, Memphis, for plaintiff-appellant.

James D. Causey, Alice L. Gallaher, Memphis, for defendants-appellees.

## OPINION

DROWOTA, Justice.

The issues in this Workers' Compensation case are (1) whether the Plaintiff–Appellant, Christopher J. Corcoran, carried his burden of proof regarding the permanency of his injury and (2) the determination of the extent of his permanent partial vocational disability. The Defendants are Foster Auto GMC, Inc., and its insurer, Orion Group, Inc.

### I.

At the time of his injury, Plaintiff had been working as an automobile mechanic for Defendant for several years. He has a high school equivalent education and is a certified, qualified mechanic specialized in import repair. On July 1, 1985, Plaintiff and a co-worker were removing a hood from a Mazda automobile when the co-worker allowed the entire weight of the hood to shift to Plaintiff, who was unable to hold the hood alone. The strain of attempting to support the weight caused Plaintiff to suffer a left inguinal hernia. Plaintiff fell to the floor in severe pain and was immediately taken to the hospital by his supervisor. The following day Plaintiff underwent surgery to repair the hernia. He remained in the hospital for about a week and following his release from the hospital, he was off from work for another two to three weeks. Returning to work in August, 1985, with permanent restrictions on lifting and straining, Plaintiff was unable fully to resume the duties of a mechanic and was assigned to work as a service writer. He was subsequently terminated for reasons not shown in this record. On November 27, 1985, Plaintiff filed the Complaint in this case to recover Workers' Compensation benefits for a permanent partial disability due to the injury he suffered in the course and scope of his employment.

A hearing was held on July 29, 1986. In addition to describing the circumstances of the accident, Plaintiff testified that he was 33 years old and had worked as an automobile mechanic for over thirteen years. Prior to his most recent hernia injury, he had experienced two inguinal hernias on his right side, one in 1979 and another in 1984, which was work-related, but both had been successfully repaired. He also had an umbilical hernia in 1984. None of these prior injuries resulted in any permanent impairment. On the day of his injury, July 1, 1985, he was taken to the hospital and attended by Dr. Alvin E. Laughlin, who performed surgery to repair the hernia on the following day. He stated that his work as a mechanic commonly requires him to lift weights of 25 to 30 pounds and often involves lifting weights exceeding 50 pounds. Some of the tools he must use weigh up to 50 pounds and a few weigh up to 100 pounds. The automobile parts he must repair or replace can reach as much as 100 pounds or more. He estimated that the hood he was lifting on the day of his accident may have weighed up to 40 or 50 pounds. He believed that he lifted items in excess of 30 pounds about 30 to 40 percent of his working time. Further, his work regularly requires him to strain when utilizing his tools and places him in awkward positions that strain his abdomen. After he returned to work, his left hernia caused him problems whenever he lifted much weight or strained. Even a task as relatively simple as cutting grass causes him discomfort and he is not as active as he was prior to the injury. Although several lifting devices were provided at Defendant's shop, they were not always readily available and were often inefficient to use. Because he was restricted by Dr. Laughlin from heavy lifting, Plaintiff's supervisor made him a service advisor or writer; his compensation remained unchanged. He was subsequently terminated and has not

found work since that time, although he has earned some money by buying and selling used cars. Apparently, he still experiences some residual discomfort due to his injury.

Dr. William H. Jenkins, a vocational rehabilitation specialist at Memphis State University with 24 years experience, also testified for Plaintiff. An evaluation of Plaintiff was conducted on June 14, 1986. He classified a mechanic's job as medium to heavy labor, frequently involving lifting weights in excess of 50 pounds and requiring the worker to have a full and unrestricted range of body movement. In his opinion, given Plaintiff's medical restrictions on lifting or straining, his ability to work as a mechanic has been significantly compromised, relegating him primarily to jobs outside his skill. Moreover, Plaintiff's physical impairment has foreclosed competing for jobs in a number of other areas because he cannot lift more than 30 pounds. Consequently, given the limited transferability of his skills and his educational level, Dr. Jenkins believed Plaintiff was qualified primarily for minimum wage employment.

Defendant then called Mr. Lewis Knight, the Defendant's Service Director, to testify. He hired Plaintiff in 1980. Mr. Knight stated that relatively little of Plaintiff's time had involved lifting in excess of 30 pounds. Another employee, Mr. Bud McGee, was also called to testify for Defendant. He works as a front-end mechanic. Himself injured with a hernia, Mr. McGee testified that, prior to his injury, he commonly lifted substantial weight in the ordinary course of his work. He described the weights of various automobile parts and tools that are frequently used by mechanics unassisted. Many weigh over 30 pounds. He stated that he now uses lifting devices to assist him due to his hernia injury, but he admitted that his doctor had placed no restrictions on him and that he had only one hernia.

Following this testimony, the trial court continued the case to permit Plaintiff to supplement the proof concerning the lifting requirements of a mechanic's work. The trial court had expressed skepticism about the amount of weight mechanics were required to lift on a regular basis. The second hearing was conducted on October 7, 1986. Plaintiff called Mr. James Huckaby to testify as an expert. Mr. Huckaby owns his own garage and has 16 years experience as a qualified mechanic. He described the many situations in which mechanics are confronted with lifting weights in excess of 20 to 30 pounds. He corroborated much of the testimony of Mr. McGee and of Plaintiff concerning the necessity to lift substantial weight as a regular part of a mechanic's work. He also testified that the use of lifting devices is often impractical and inefficient. As an employer, he would not hire a mechanic who had a history of hernias because that person would not be sufficiently productive.

The only medical testimony was introduced through the deposition of Dr. Laughlin, whose services had been approved and accepted by Defendants. Dr. Laughlin is a peripheral vascular surgeon. He had never treated or seen Plaintiff prior to July 1, 1985. He stated that Plaintiff's injury was consistent with the history described by Plaintiff. In view of Plaintiff's prior hernias, Dr. Laughlin "felt [that] his tissues in [the abdominal] area were weakened and ... he should not do any heavy lifting or straining in the future because ... he would have a tendency to have a recurrence of these hernias as he had already had on the other side." On July 30, 1985, Dr. Laughlin wrote a letter to Defendants regarding Plaintiff's restrictions, stating that "[t]here is no heavy lifting on a permanent basis." Dr. Laughlin did not believe Plaintiff should do any heavy lifting or straining in the future. When asked to attribute a disability impairment rating to Plaintiff, Dr. Laughlin stated that

"I don't have any idea how to do a disability rating. I wrote this insurance company and I told them I felt like he should not do any heavy lifting or straining in the future.... I've never seen a disability rating form and I have no experience in filling out one ... and have never used one."

Nevertheless, Dr. Laughlin testified that Plaintiff was not 100 percent disabled and that he was not disabled for sedentary work. He was of the opinion that Plaintiff could safely lift up to about 30 pounds. He thought that the chance of recurrence was significant enough that Plaintiff was restricted to "light lifting, if any," and certainly no heavy lifting. In a November 4, 1985, letter to the insurer, Dr. Laughlin wrote that "[s]ince [Plaintiff] had already had one recurrence on the right side, I think it would be in his best interest i[f] he did no more heavy lifting in a work capacity," and reiterated that "I have no information as to a 'disability rating' on this man."

At the close of the evidence, the trial court reasoned that because the physician failed to attribute an anatomical disability rating to Plaintiff, he was without guidance to determine the extent of vocational disability and thus concluded that he would be speculating to assess the extent of permanent partial disability. On October 21, 1986, the trial court entered its Findings of Fact and Conclusions of Law; the court determined that the testimony that a mechanic is required to lift heavy weights was not credible and that the record contained "no expert testimony that the Plaintiff has suffered a permanent disability." The court then granted Defendants' Motion to Dismiss. Notice of Appeal was duly filed by Plaintiff. We now reverse the judgment of the trial court and remand the case for a determination of the extent of Plaintiff's permanent partial disability.

## II.

■ The accident in which Plaintiff was injured occurred on July 1, 1985, and thus the standard of review in this case is *de novo* pursuant to T.C.A. § 50–6–225(e) (Supp.1987). *See Alley v. Consolidation Coal Co.,* 699 S.W.2d 147, 147–148 (Tenn. 1985). "This standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. Witherspoon, Inc.,* 734 S.W.2d 315, 315 (Tenn. 1987). We are no longer bound by the findings of the trial court in these cases and now determine where the preponderance of the evidence lies.

The trial court denied compensation to Plaintiff because the doctor to whom he was taken by Defendants would not or could not rate the degree of Plaintiff's permanent anatomical disability. In the recent case of *Humphrey v. Witherspoon, Inc., supra,* we briefly discussed the provisions of T.C.A. § 50–6–204(d)(3) (Supp. 1987).[1] In *Humphrey,* the medical expert failed to use the most recent edition of Guides to the Evaluation of Permanent Impairment, contrary to the express requirements of the statute. 734 S.W.2d at 317. For this and other reasons, the Court reversed the judgment of the trial court in awarding the plaintiff compensation for permanent partial disability and remanded the case for a new trial in which the extent of impairment could be properly determined. *Id.,* at 318. We did not, however, construe the statutory language providing that "[a] practitioner shall be required to give an impairment rating based on one (1) of the two (2) publications noted above."

■ Originally, Chapter 393, § 3, 1985 Public Acts, which was effective July 1,

---

1. This statute has recently been amended twice. By 1985 Public Acts, chapter 393, § 3, the Legislature provided that anatomical disability ratings are to be based on the most recent edition of the American Medical Association Guides to the Evaluation of Permanent Impairment. Chapter 792, § 1, 1986 Public Acts, effective July 1, 1986, subsequently permitted a second source to be used to determine anatomical disability, that is, the American Academy of Orthopedic Surgeons Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment. In its entirety, T.C.A. § 50–6–204(d)(3) (Supp.1987) now reads:

To provide uniformity and fairness for all parties, any medical report prepared by a physician furnishing medical treatment to a claimant shall use the American Medical Association Guides to the Evaluation of Permanent Impairment, (American Medical Association), or the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment, (American Academy of Orthopedic Surgeons). A physician shall utilize the most recent edition of either publication in determining the degree of anatomical impairment. A practitioner shall be required to give an impairment rating based on one (1) of the two (2) publications noted above.

1985, provided that "[a] practitioner shall be required to give an impairment rating based on the AMA guide." Given that the express purpose of the statute is "[t]o provide uniformity and fairness for all parties," the statutory language, taken as a whole, clearly evidences a legislative intent to standardize the methods of rating percentages of anatomical disability to minimize arbitrariness and encourage predictability in such assessments by medical experts. The statute does no more than require that medical experts use one of two statutorily approved guides whenever rating an injured employee's anatomical impairment and does not affect in any way the employee's burden of proof as previously established by the statute and the case law. We do not think that, when medical evidence establishes permanency, the failure of a medical expert to attribute a percentage of anatomical disability can justify a denial of compensation if the other evidence demonstrates that an award of benefits is appropriate. Otherwise the remedial purpose of the Workers' Compensation Act could easily be frustrated. In *Martirez v. Meharry Medical College,* 673 S.W.2d 141 (Tenn.1984), this Court refused to permit denial of compensation because a doctor to whom the employee was sent by the employer failed to submit the statutorily required medical report. "The failure of [the physician] to furnish the requested medical report cannot in any way be blamed on the plaintiff. She was in no way responsible for his conduct; he was an employee of the defendant-employer...." *Id.,* at 144. Similarly, an employee cannot control the medical expert's compliance with this statutory requirement.

■ While an anatomical disability rating based on one of the two statutory references is preferable and ordinarily, if not uniformly, part of the proof offered by either or both parties, the ultimate issue is not the extent of anatomical disability but that of vocational disability, the percentage of which does not definitively depend on the medical proof regarding a percentage of anatomical disability. Once causation and permanency are shown by medical evidence, " '[w]e do not find, either in the

statute or in the cases, a mandatory requirement that the trial judge fix permanent partial loss of use ... solely with reference to expert testimony.' " *Holder v. Wilson Sporting Goods,* 723 S.W.2d 104, 108 (Tenn.1987) (citation omitted). In *Crane Enamel Co. v. Jamison,* 188 Tenn. 211, 217 S.W.2d 945 (1948), the record in which contained only evidence concerning total permanent disability, the lack of any percentage of anatomical disability was not considered a fatal defect in the proof to foreclose recovery of benefits for permanent partial disability. The Court stated a principle applicable to this case as well:

> "It is true that no witness has testified to any percentage of disability. Most, if not all of the petitioner's evidence, is in support of her contention that she is totally and permanently disabled. We cannot say that the fifty percent ... partial disability as decreed ... is not supported by material evidence. *Its validity is not dependent upon proof by some expert medical man, or lay witness, as to an exact percentage of disability.* Certainly an injured employee should not be denied compensation merely because he is unable to find a witness who can testify to the exact percentage of his disability. That is a question solely for the trial court to determine from all the evidence in the case, including expert and non-expert witnesses."

188 Tenn. at 218–219, 217 S.W.2d at 948–949 (emphasis added). Moreover, when an employee's injury is compensable, this Court has generally disfavored dismissal by a trial court on technical grounds or where the record did not otherwise support denial of compensation. *See, e.g., Humphrey v. Witherspoon, Inc., supra; Haley v. Dyersburg Fabrics, Inc.,* 729 S.W.2d 665 (Tenn.1987); *Staten v. Royal Insurance Co.,* 664 S.W.2d 65 (Tenn.1984); *Uptain Construction Co. v. McClain,* 526 S.W.2d 458 (Tenn.1975); *Floyd v. Tennessee Dickel Distilling Co.,* 225 Tenn. 65, 463 S.W.2d 684 (1971); *Crane Enamel Co. v. Jamison, supra.*

■ In our opinion, if a trial court is unsatisfied with the medical proof regard-

ing the degree of anatomical disability and cannot assess the extent of vocational disability on the evidence adduced in the record, T.C.A. § 50–6–204(d)(5) (Supp.1987) may be invoked and a physician appointed to evaluate the employee for this purpose. Such an action by the trial court would obviate any necessity for this Court to remand the case for a new trial where the employee has otherwise sufficiently demonstrated that the injury is compensable. This would also be consistent with the fundamental remedial policy of the Workers' Compensation Act. T.C.A. § 50–6–116. In *Floyd v. Tennessee Dickel Distilling Co., supra,* unlike the present case, the record contained no evidence of permanence, but rather than deny the employee any recovery, the Court concluded

> "that complete justice cannot be had in this case in the absence of medical testimony with respect to [the employee's] permanent disability. For that reason, under the authority given us by T.C.A. [§ 27–3–128], the case will be remanded for the taking of proof on the issues of permanence of disability. Since this issue is so inextricably entwined with that of the extent of any permanent disability, the latter issue must also be opened on remand."

225 Tenn. at 69, 463 S.W.2d at 686. As we recently emphasized, "[i]t is the duty of the courts to see that injured workers receive the just compensation to which they are entitled." *Haley v. Dyersburg Fabrics, Inc., supra,* at 667.

▆▆▆ In regard to permanency, all the law requires in Workers' Compensation cases is that it be shown in all but the most obvious cases by expert medical evidence. *See, e.g., Holder v. Liberty Mutual Insurance Co.,* 587 S.W.2d 372, 374 (Tenn.1979); *Owens Illinois, Inc. v. Lane,* 576 S.W.2d 348, 350 (Tenn.1978). The permanency of an anatomical disability and the extent of vocational disability are, however, separate issues. *See, e.g., Uptain Construction Co. v. McClain, supra,* at 460. We have consistently distinguished the two types of disability for the purposes of Workers' Compensation. *See, e.g., Holder v. Wilson Sporting Goods Co., supra,* at 107; *Ben-*

*nett v. Howard Johnsons Motor Lodge,* 714 S.W.2d 273, 279 (Tenn.1986); *Smith v. Hale,* 528 S.W.2d 543, 545 (Tenn.1975). While expert evidence is required to establish permanency in most cases, the extent of vocational disability is a question of fact for the trial court to determine from all of the evidence, including lay and expert testimony; the medical expert's rating of anatomical disability is merely one of a number of relevant factors used to make this determination. "In determining the amount of disability suffered by an injured employee, the trial court considers all the evidence and is not restricted to the precise estimate of disability made by a medical witness." *Forest Products v. Collins,* 534 S.W.2d 306, 309 (Tenn.1976) (citations omitted). *See also, e.g., Gregory Co. v. Durdin,* 537 S.W.2d 701, 703 (Tenn.1976); *Employers Insurance Co. of Alabama v. Heath,* 536 S.W.2d 341, 342–343 (Tenn.1976); *Employers–Commercial Union Companies v. Taylor,* 531 S.W.2d 104, 105 (Tenn.1975); *Skipper v. Great Central Insurance Co.,* 225 Tenn. 584, 592, 474 S.W.2d 420, 424 (1971).

▆▆▆ In cases of unscheduled injuries, once the threshold issue of permanency is established by competent medical evidence, the inquiry becomes how much the injury impairs the employee's earning capacity, that is, the extent of vocational disability. On this issue, nonexpert evidence is also relevant, including the testimony of the injured employee. "In this case, as in all workmen's compensation cases, the claimant's own assessment of his physical condition and resulting disabilities is competent testimony and cannot be disregarded." *Tom Still Transfer Co. v. Way,* 482 S.W.2d 775, 777 (Tenn.1972). *See also Floyd v. Tennessee Dickel Distilling Co., supra,* 225 Tenn. at 68, 463 S.W.2d at 686. In determining vocational disability, the question is not whether the employee is able to return to the work being performed when injured, but whether the employee's earning capacity in the open labor market has been diminished by the residual impairment caused by a work-related injury. *See, e.g., Holder v. Wilson Sporting Goods, supra,*

at 108; *Prost v. City of Clarksville Police Dept.*, 688 S.W.2d 425, 427 (Tenn.1985). As this Court stated in *Greenville Cabinet Co. v. Ramsey*, 195 Tenn. 409, 416, 260 S.W.2d 157, 160 (1953) (citation omitted; emphasis in original), " '[t]he test is whether or not there has been a decrease in [the employee's] *capacity* to earn wages in any line of work available to the [employee]....' " This is so because "the whole theory of the Workmen's Compensation statute is that compensatory income is substituted for loss of earning capacity." *Ware v. United States Steel Corp.*, 541 S.W.2d 107, 111 (Tenn.1976). That an injured worker is reemployed after an injury is a relevant factor to the determination of the extent of vocational disability, regardless of whether the employee returns to the same employment or to some other work. Nevertheless, this factor is not controlling and is only one of many that must be considered. Despite the employee's return to any employment, if the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury, then that is what is meant by vocational disability for the purposes of Workers' Compensation. The assessment of the extent of vocational disability is based on all pertinent factors taken together. "The assessment of permanent ... disability is based upon numerous factors, including the employee's skills and training, education, age, local job opportunities, and his capacity to work at the kinds of employment available in his disabled condition." *Robertson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn.1986).

### III.

In the case *sub judice*, the denial of compensation was improper and constitutes plain error on this record. The Plaintiff carried his burden of proof on permanency as required under the Workers' Compensation Act. The compensability of his injury is manifest on this record. Plaintiff suffered a hernia in the course and scope of his employment and has retained a permanent partial disability as a result of this injury. The preponderance of the evidence clearly demonstrates that Plaintiff is entitled to compensation. Whether or not mechanics are required to lift heavy objects is irrelevant because the assessment of his vocational disability is not based on the job he had at the time of his injury, but rather on the Plaintiff's ability to compete for employment in the open labor market in his disabled condition; thus, that the trial court found the testimony on this issue lacked credibility cannot affect Plaintiff's right to compensation.

Taken as a whole, as required by the case law, *e.g.*, *Vandergriff v. Bituminous Casualty Corp.*, 692 S.W.2d 20, 22 (Tenn.1985), the medical proof shows that the residual impairment from Plaintiff's injury is permanent, that this impairment prevents him from lifting any weight in excess of 30 pounds, that the Plaintiff is not totally disabled and can do sedentary work or work involving light lifting, although not without some risk due to his tendency to recurring hernias; Plaintiff is also restricted from placing any significant strain on his abdominal muscles, which often occurs when he uses his tools or assumes awkward positions during the ordinary course of his work as a mechanic. Other relevant proof on the extent of Plaintiff's vocational disability includes the facts that he is 33 years old, has a high school equivalent education, and has no other training than as a mechanic; however, he was unable to continue working as a mechanic for Defendant and had not found other employment at the time of trial. He still experiences some discomfort due to his injury, making relatively simple tasks like mowing the lawn difficult and otherwise restricting many of his activities. He has a history of hernias that makes him unsuited for many jobs for which he might otherwise qualify. Dr. Jenkins, a vocational rehabilitation specialist, concluded that Plaintiff could not compete for jobs as a mechanic, leaving him without a skill and limiting the types of employment for which he was qualified, especially in his disabled condition. His training as a mechanic might be transferable to some extent to work as a service writer or advisor, which Plaintiff

did perform for a short time following his injury. Another expert, Mr. Huckaby, who owns his own garage testified that he would not hire a mechanic with Plaintiff's disability. Clearly, Plaintiff's ability to compete for employment, not only as a mechanic but in the open labor market, has been diminished and he has lost earning capacity as a result of his work-related injury. As this Court recently observed in *Jackson v. Greyhound Lines, Inc.,* 734 S.W.2d 617 (Tenn.1987), which also involved an injured mechanic:

> "His injury has left Plaintiff incapacitated to perform the duties of a mechanic as efficiently as he did prior to the accident. His ability to find employment on the open labor market, in view of his age, education, physical condition, and skills, is significantly impaired by his injury and 'the all pervading purpose of the Workman's Compensation laws is to substitute compensatory income for loss of earning capacity.'"

*Id.,* at 621 (citation omitted).

Whether mechanics lift heavy weights or not does not have any bearing on the obvious facts that this Plaintiff incontrovertibly suffered a hernia in the scope and course of his employment, as a result of which he retains a permanent partial vocational disability that prevents him from competing as effectively in the open labor market because he no longer can lift over 30 pounds and has lost the full range of unrestricted body motion. The extent of that impairment must be determined. Accordingly,

> "[t]he judgment of the trial court is reversed and this cause is remanded for a new trial on the evidence already adduced and upon any other evidence which the parties may wish to introduce. We are not satisfied that upon this record proper consideration has been given to the medical testimony."

*Haley v. Dyersburg Fabrics, Inc., supra,* at 667. *See also Humphrey v. Witherspoon, Inc., supra,* at 318. On remand, the sole issue is the extent of Plaintiff's permanent partial vocational disability; the determination of the trial court must be consistent with the facts and law of this case as expressed in this opinion. To do complete justice, should the trial court find it necessary, a neutral physician may be appointed by the court under T.C.A. § 50–6–204(d)(5) (Supp.1987) to rate Plaintiff's anatomical disability pursuant to T.C.A. § 50–6–204(d)(3) (Supp.1987). The costs are taxed to Defendants.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

## ORDER ON PETITION TO REHEAR

PER CURIAM.

Appellant, Christopher J. Corcoran, has filed a petition to rehear in the above case. After careful consideration, the Court is of the opinion that the petition to rehear is not well taken and the same is denied at the cost of Appellant.