IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 15, 2005 Session

**DAVID E. CONN v. OKSOON CONN**

**A Direct Appeal from the Chancery Court for Maury County**
**No. 02-711     The Honorable Stella L. Hargrove, Chancellor**

**No. M2004-00995-COA-R3-CV - Filed September 8, 2005**

In this divorce case, Husband/Appellant appeals and raises issues involving the division of certain marital property. Finding that the trial court did not abuse its discretion in making its division of the marital property, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Thomas F. Bloom of Nashville, Tennessee, for Appellant, David E. Conn

Michael D. Cox of Columbia, Tennessee, for Appellee, Oksoon Conn

**OPINION**

David E. Conn ("Husband," or "Appellant") and Oksoon Conn ("Wife," or "Appellee") were married on April 23, 1997. The parties began dating in 1991. Soon after they began dating, in 1992, Ms. Conn had a home constructed at 1730 Oakway Circle in Columbia, TN (the "Residence"). The Residence was constructed for $86,500.00  Ms. Conn paid $30,000.00 down and financed the remaining $56,500.00[1] Prior to their marriage, in April 1993, Mr. Conn moved into the Residence with Ms. Conn.

On November 19, 2002, Mr. Conn filed a "Complaint for Divorce" (the "Complaint") against Ms. Conn. The Complaint seeks a divorce on grounds of inappropriate marital conduct and

---

[1] The source of the funds for the down payment was disputed at trial. Wife testified that the funds came from the sale of her previous home in Michigan. Husband testified that Wife had borrowed the funds from her brother and that the couple had repaid the brother after they married. In its "Findings of Fact and Conclusions of Law," discussed *infra*, the trial court found that the $30,000.00 down payment was paid from Ms. Conn's separate funds.

irreconcilable differences and requests an equitable division of the parties' marital property and marital debt. On February 14, 2003, Ms. Conn filed an "Answer and Counter-Complaint" in which she denied being guilty of inappropriate marital conduct but admitted that irreconcilable differences had arisen between the parties. In her Counter-Complaint, Ms. Conn seeks a divorce on the grounds of inappropriate marital conduct and irreconcilable differences and asks the court to make an equitable division of marital property and debt.

A hearing was held on October 27, 2003. On November 10, 2003, the trial court entered its "Findings of Fact and Conclusions of Law." The "Findings of Fact and Conclusions of Law" reads, in relevant part, as follows:

> SEPARATE PROPERTY-REAL PROPERTY: Upon marriage of the parties in March of 19[97], Wife owned a house and lot located at 1730 Oakway Circle in Spring Hill, Tennessee. The parties began living together in this house in April of 1993. At that time, Husband began paying rent to Wife at the monthly rate of $300.00. This property will be further discussed under "marital property."

> SEPARATE PROPERTY–PERSONAL PROPERTY: At the time of marriage, each of the parties had savings plans (ISP) with Saturn; Husband had an investment account with AG Edwards...valued at $2,222.58; and Wife had a ROTH IRA through Primerica Shareholder...valued at $12,997.49. As to all other separate personal property, the Court accepts Wife's list of property and valuation pursuant to Exhibit No. 7-E & H.

> DISTRIBUTION OF MARITAL PROPERTY: In making a distribution of marital property, the Court has considered all applicable factors of Tenn. Code Ann. §36-4-121, including:

> Duration of the marriage: The parties were married on March 23, 1997, and separated in November 2002. In this short-term marriage of over five (5) years at separation, the Court has an obligation to restore the parties to their pre-marriage positions. This is a second marriage for each of the parties.

> The age, physical and mental health, vocational skills, employability, earning capacity, estate and financial needs of the parties: Husband is 53 years old; Wife will be 56 in November, 2003. Neither party complains of ill health. Both of the parties are employed by Saturn, earning comparable gross incomes of over $65,000.00 in 2002.

The relative ability of each party for future acquisitions of capital assets and income; Husband's ISP with Saturn is valued at $96,554.52; Wife's ISP is valued at $134,550.19.

The contributions of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the martial property, including the contribution of a party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role: It is undisputed that Husband deposited his earnings in a joint checking account, keeping only a small amount for personal items each pay period. All expenses were paid from this account. Wife deposited her check in a joint savings account. Wife complained that Husband gambled, and stated that "she protected the money." It is clear that Husband likes to gamble. Wife does not. It is also clear that it is through Wife's frugality that the parties are debt free and are in good financial standing. The Court finds that each party has contributed to the acquisition and appreciation of the marital property. Wife's efforts of preservation are noteworthy; however, the Court cannot find that Husband's gambling has caused any measurable dissipation of assets.

The economic circumstances of each party at the time the division of property is to become effective and the tax consequences to each party: While Maury County is economically depressed, these parties enjoy full-time positions with the third largest employer in the county.

The Court finds the following to be an equitable division of marital assets and allocation of marital debt:

The marital residence–It is undisputed that the residence previously owned by Wife...is now marital property. Exhibit No. 6 is an appraisal of the property, dated July 10, 2003, reflecting the fair market value to be $169,000.00. While Wife insists that this value is too high, she is the one who chose the appraiser. From the proof, the Court finds that this house was built in 1991 at a cost of $86,500.00. Wife paid $30,000.00 cash of her own money, and financed $56,500.00. Husband began paying rent in 1993, and the parties married in March of 1997. In 1998, the parties refinanced to get a lower APR, and jointly executed a mortgage for $55,000.00. By paying no less than $300.00 per month and paying up to $600.00

monthly from bonuses received by both parties, they were able to pay off the mortgage early.

Wife testified that the property had a fair market value of $110,000.00 in 1997. The Court accepts this value. The Court finds the fair market value of the property at the present time to be $169,000.00. Wife will receive the property as her sole and separate property. Husband will receive the sum of $29,500.00 to be paid by Wife within thirty (30) days of completion of the appraisal of the stamp and coin collection as set out hereafter. This figure is derived as follows: Subtracting the fair market value of $110,000.00 as Wife's separate asset in 1997, from the present fair market value of $169,000.00, the Court is using the remainder of $59,000.00 as the increase in equity since the marriage of the parties. Husband is entitled to an equitable share of one-half of $59,000.00 or $29,500.00, for his contributions to the mortgage, upkeep, maintenance, repairs and replacements to the property prior to separation....

Savings Accounts, etc–The Court finds the following accounts to be marital property, subject to equal division. This includes the worker's compensation settlement received by Wife during the marriage, reflected below as "CD–First Farmers & Merchants National Bank...."

The accounts are as follows:

CD UAW CREDIT UNION...–      VALUE: $21,155.76
CD BANK OF AMERICA...–      VALUE: [$]7,028.81
CD BANK OF AMERICA...–      VALUE: $12,139.94
CD BANK OF AMERICA...–      VALUE: [$]12,514.09
INVESTMENT ACCT.–PRIMERICA SHAREHOLDER...
                              VALUE: [$]6,575.13
SAVINGS ACCT.–BANK OF AMERICA...
                              VALUE: [$]10,259.88
SAVINGS ACCT.–BANK OF AMERICA...
(PROCEEDS OF CD BANK OF AMERICA...)
                              VALUE: [$]14,000.00
CD–FIRST FARMERS & MERCHANTS
NATIONAL BANK               VALUE: [$]25,722.33

TOTAL TO BE DISTRIBUTED EQUALLY   $109,395.94
50% TO HUSBAND = $54,697.97
50% TO WIFE       = $54,697.97

Retirement/Savings Plans: Each of the parties will retain his/her ISP with Saturn.

Vehicles – Each of the parties will keep the vehicle in his/her possession.

Other Personal Property – The Court approves the designations, valuations and distributions of Wife as reflected by Exhibit 7-D, F & G. The Court finds that the entire stamp and coin collection shown on Exhibit 7-I, J & K were acquired after the marriage. The collections will be valued by an appraiser to be agreed upon by the parties. The parties will each pay one-half of the appraisal fee. Once the value is established, each party will receive a share of the coins/stamps equal to one-half of their total value. Wife may elect to allow Husband to keep her one-half share in full or partial payment of the $29,500.00 owed to him by her as his equitable interest in the marital residence.

THE DISCOVER CARD DEBT: Wife will pay this marital debt of $915.02....

The trial court entered an Order on December 3, 2003, which grants the parties a divorce and incorporates, by reference, the above "Findings of Fact and Conclusions of Law". In this Order, the trial court also adopts Ms. Conn's proposal regarding the distribution of personal property.

On December 11, 2003, Mr. Conn filed a "Motion to Amend Final Order," which reads, in pertinent part, as follows:

1. When determining the marital value of the parties['] home...the Court found that the present value is $169,000.00 and that the value at the time of the marriage was $110,000.00. However, at the time of the marriage there was a mortgage on the property in the approximate amount of $55,000.00. If you subtract mortgage amount from the value at the time of the marriage, you come up with equity in the amount of $55,000.00 at the time of the marriage. The increase in equity during the course of the marriage was in fact, the present value of $169,000.00 less the equity at the time of marriage, $55,000.00 or $114,000.00. Plaintiff therefore avers that he should be receiving $57,000.00 for his share of the increase in equity during the course of the marriage.

2. Plaintiff will further show that the Primerica account was valued at $12,997.49 by the Court. Plaintiff has never been provided proof of the current value of this account. Although in wife's

separate name, this was contributed to on a monthly basis during the course of the marriage as was shown to the Court. This account should have been divided equally between the parties.

3. Plaintiff will further show that in her list of marital property, the Defendant failed to list the value of the horse collection. Plaintiff had testified that this was a valuable collection and that many of the horses were purchased at auction. If Defendant is to receive half of the coin collection, without taking into consideration the coins that were owned by Plaintiff prior to marriage and those that were gifts, the horse collection, along with all other collectibles received during the marriage should be appraised and divided along with the coin collection. The testimony was conflicting about when the coin collection was started. Plaintiff will show that many of the uncirculated coins were inherited from his father. The fairest division would be to allow the Defendant to retain her collection and Plaintiff to retain his collections.

4. Plaintiff will further show that in accepting Defendant's list, the court gave the Defendant all property purchased with the proceeds from the water loss. Plaintiff would show that this is not equitable as he lost $904.45 worth of personal property and the joint reimbursement was $1,376.23. If Defendant was to receive all furniture and furnishings purchased following this loss, Plaintiff should be reimbursed for his portion of the claim or $1,592.56.

On December 15, 2003, Ms. Conn also filed a "Motion to Alter or Amend the Judgment," seeking to have the savings account at Bank of America with the value of $10,259.88 (see "Findings of Fact and Conclusions of Law" above) declared to be her separate property. On January 22, 2004, Ms. Conn filed a "Response to Plaintiff's Motion to Amend". Following a hearing on February 25, 2004, the trial court entered an Order on March 3, 2005 denying the respective motions to alter and/or amend the final judgment.

Mr. Conn appeals and raises four issues for review as stated in his brief:

I. Whether the trial court erred in dividing the marital property, specifically the equity in the marital home.

II. Whether the trial court erred in failing to divide the Primerica Roth IRA.

III. Whether the trial court erred in failing to divide the horse figurine collection.

IV. Whether the trial court erred in failing to divide the proceeds from the water damage claim.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record of the proceedings below with no presumption of correctness with respect to the trial court's conclusions of law. Tenn. R. App. P. 13(d); *see also Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn.1996). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn.1993). We further note that when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App .1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997). However, in reviewing documentary proof, "all impressions of weight and credibility are drawn from the contents of the evidence, and not from the appearance of witnesses and oral testimony at trial." *Wells v. Tennessee Board of Regents*, 9 S .W.3d 779, 783-784 (Tenn.1999). As a result, appellate courts may make an independent assessment of the credibility of the documentary proof it reviews, without affording deference to the trial court's findings. *See Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988).

Under Tennessee law, although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. *Bookout v. Bookout*, 954 S.W.2d 730, 731 (Tenn.Ct.App.1997). Thus, an equitable division of marital property need not be an equal division of the property. *Id*. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. *Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn.Ct .App.1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121(c)(Supp.2004). That statute provides, in relevant part:

> In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate

property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Having reviewed the law governing the division of marital property, we now proceed to consider separately each of the properties at issue in this appeal.

Marital Residence

On appeal, Mr. Conn asserts that the trial court erred in dividing the Residence. Specifically, he contends that his equitable share of the Residence should be increased from $29,500.00 to $57,000.00. The trial court determined that the value of the Residence at the time of the marriage was $110,000.00. This amount was taken from Ms. Conn's undisputed testimony. According to the appraisal, which was admitted as an Exhibit at the trial, the Residence had appreciated to a value of $169,000.00 at the time of the divorce proceedings. Subtracting the $110,000.00 from the $169,000.00, the trial court arrived at a total appreciation amount of $59,000.00, which the trial court divided equally between the parties.

Mr. Conn asserts that the trial court failed to take into consideration the $56,500.00 mortgage that was on the Residence at the time of the marriage. Based upon his assertion that the parties jointly refinanced $55,000.00 in 1998 and that the payments for the mortgage amount were derived primarily from his pay check, Mr. Conn contends that the trial court should have found that the initial equity in the house was $55,000.00 (as opposed to $110,000.00). In essence, Mr. Conn argues that the $55,000.00 amount that the parties jointly refinanced in 1998 should be subtracted from the $110,000.00 value of the Residence at the time of the marriage to show equity of $55,000.00 in the home at the time of the marriage. Consequently, he contends that, based upon the appreciation in value, he is entitled to $57,000.00 in equity (i.e. $169,000.00 minus $55,000.00 = $114,000.00 ÷ 2 = $57,000.00).

It is undisputed in the record that the $55,000.00 refinance amount was assumed as marital debt; and, during the course of the marriage, this amount was paid in full. Consequently, we cannot

say that the trial court erred in declining to subtract the $55,000.00 from the $110,000.00 value of the Residence at the time of the marriage. Mr. Conn further asserts that it was his pay check that went to the mortgage payment and expenses of the Residence during the course of the marriage. These funds, however, were marital funds. As such, Mr. Conn is not entitled to extra credit for these expenditures. From the record as a whole, and in light of the factors found at T.C.A. § 36-4-121(c) and set out above, we cannot say that the trial court erred in its calculation of the values of the Residence (both at the beginning of the marriage and at the time of the divorce), in its calculation of the appreciation in the Residence, or in its equally dividing the amount of appreciation between these parties. Given the short duration of this marriage, the fact that Ms. Conn initiated the building of this Residence, and the fact that Ms. Conn used $30,000.00 of her separate funds to purchase the Residence,[2] we find the division arrived at by the trial court to be quite equitable.

Primerica Roth IRA

It is undisputed in the record that the Primerica Roth IRA was set up by Ms. Conn, in her name only, prior to the marriage. Prior to the marriage, Ms. Conn was contributing between $75.00 and $100.00 per month to this IRA. Although Mr. Conn asserts that Ms. Conn increased her contribution to the IRA after the marriage and paid these contributions from marital funds, there is no evidence in the record to show the exact amounts of the contributions after the marriage or how much the IRA was worth prior to the marriage. From the evidence that was introduced, the trial court valued the account at $12,997.49 and awarded same to Ms. Conn as her separate property. Based upon the record before us, we cannot say that the trial court erred in either its valuation of this IRA, or in its awarding the account to Ms. Conn as her separate property.

Horse Figurine Collection

Concerning the valuation of the horse figurine collection, there is no documentary proof. Rather, Mr. Conn testified that some of the figurines carried a value as high at $200.00 each. Ms. Conn testified that the collection was worth very little and that the most expensive figurine in the collection would be worth no more than $90.00. On appeal, Mr. Conn asserts that the trial court should have given the same treatment to the horse figurine collection as it did to the coin collections. Specifically, Mr. Conn asserts that the trial court should have ordered an appraisal on the horse figurine collection and should have divided the value equally between the parties. As discussed above, it is well settled in Tennessee that, although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. *Bookout v. Bookout*, 954 S.W.2d 730, 731 (Tenn.Ct.App.1997). Thus, an equitable division of marital property need not be an equal division of the property. *Id.* From the record before us, we cannot find that the trial court erred in declining to divide the value of the horse figurine collection equally between the parties, even in the face of the equal division of the value of the coin collection.

Proceeds from Water Damage

---

[2] *See* footnote 1.

During the marriage, the parties suffered water damage to the Residence and received an insurance claim in the amount of $1,376.23. Mr. Conn contends that he is entitled to $904.45, which represents the amount of damage to his separate property. We disagree. In his own testimony, Mr. Conn stated that the insurance proceeds were used to purchase a joint vehicle. Furthermore, Mr. Conn testifies that an equitable distribution of the insurance proceeds would result in his retaining his vehicle and Ms. Conn retaining her vehicle, to wit: [58]

> Q [to Mr. Conn]: Do you feel...that the [insurance] money should be taken into consideration in the division of property at all?
>
> A. I'm sorry?
>
> Q. The proceeds from that insurance settlement?
>
> A. It's pretty much already taken care of with the purchase of the vehicle, but however the judge decides to do it, that's fine with me.

Since the insurance proceeds were used to purchase marital property and since Mr. Conn does not raise an issue as to whether the division of the vehicles was proper, we cannot find that the trial court erred in declining to award Mr. Conn an additional $904.45 from the insurance proceeds.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed against the Appellant, David E. Conn, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.