KNOXVILLE POULTRY & EGG COMPANY, INC.

*v.*

RUBY EVELYN ROBINSON.

451 S.W.2d 675.

(*Knoxville,* September Term, 1969.)

Opinion filed March 2, 1970.

O'NEIL, PARKER, WILLIAMSON & JARVIS, Knoxville, for plaintiff in error.

ASQUITH, AILOR & JONES, Knoxville, for defendant in error.

Mr. Justice Creson delivered the opinion of the Court.

This record involves a workmen's compensation proceeding in which the employer, Knoxville Poultry & Egg Company, Inc., is appealing from an adverse judgment rendered in favor of the employee, Ruby Evelyn Robinson, by the Circuit Court of Knox County.

In the course of this opinion, the parties will be referred to as they appeared in the trial court; that is, Ruby Evelyn Robinson as petitioner, and Knoxville Poultry & Egg Company, Inc. as defendant.

On March 14, 1969, petitioner filed her suit seeking workmen's compensation for a "severe bronchial and respiratory condition." It was alleged that this condition resulted from constant exposure to dampness and cold temperatures in defendant's plant. Petitioner's theory is that her condition is compensable under T.C.A. sec. 50-1101, the Occupational Disease section of the Workmen's Compensation Act.

On May 21, 1969, defendant filed its answer denying (1) that petitioner suffered any injury within the purview and meaning of the Workmen's Compensation Law, and (2) that there was any causal connection between petitioner's disability and her employment.

The cause came on to be heard on August 25, 1969. On September 2, 1969, the trial judge entered judgment in

favor of petitioner, awarding her benefits for 25% permanent partial disability to the body as a whole.

Defendant has timely perfected an appeal to this Court and has filed the following assignments of error:

"1. The Court erred in holding that simple bronchitis was one of the occupational diseases listed in Section 50-1101 of the Tennessee Code Annotated.

2. The Court erred in holding that the petitioner's bronchitis was caused by her employment as required by Section 50-1101, Tennessee Code Annotated.

3. The Court erred in awarding the petitioner compensation benefits for permanent disability, there being no evidence to support such a finding."

Petitioner was forty-two years of age at the date of the trial, and has worked most of her adult life. She began working for defendant in April, 1966. At that time she had never experienced any problems with her lungs. In August, 1967, petitioner took her vacation and entered the hospital to seek treatment for a "smothering" problem. After three days, Dr. William Swann released her to return to work. At this time, petitioner attributed her difficulties to an overweight condition.

On the night of January 6, 1969, petitioner began to choke and have difficulty in breathing. She again went to Dr. Swann the next day, January 7, and was again hospitalized. She remained in the hospital seven days, and was discharged with the diagnosis of recurrent bronchitis.

Petitioner's job required her to work in cold temperatures, water and ice, all of which is required to maintain the product at proper temperatures. The temperature of

the water in which petitioner had to work was 40 degrees. She testified that she had, many times, gotten "real wet" from working in and around the water and ice. Also, on occasion, she was required to work in temperatures below ten degrees.

After being released from the hospital, petitioner testified that she seldom averaged over three or four hours sleep at night; that she chokes and smothers to an extent that a vaporizer is required to help her breathe.

A letter dated February 5, 1969, from Dr. Swann was introduced at the trial as an exhibit. It stated that petitioner "should not continue at her present job or be employed where exposed to cold and dampness."

After about four months, petitioner testified that her financial status dictated that she attempt to seek other employment. She found employment with a textile firm, for which she had worked in the past, but has found that she is now unable to work eight hours a day due to her coughing and breathing problem. She further testified that the lint from the fabrics on which she works irritates her lungs. Based on her difficulty in working at her present job, together with the fear that she may be unable to hold a full-time job, petitioner assessed her permanent disability at fifty percent.

The record reveals that, not considering her vacation week which she spent in the hospital in 1967, petitioner had missed one day of work during the three years she worked for defendant.

The "discharge summary" from the hospital, which was admitted into the record, reads, in material part, as follows:

"This patient has been followed by us since August of 1967 at which time she was admitted to this hospital and treated with a diagnosis of severe bronchitis. She improved but had recurrence of her cough in November of 1968. With failure to improve on treatment at home she is re-admitted to the hospital.

For the past three years the patient has worked in a chicken processing plant where it is necessary for her to stay in a cold room to do her work. The patient feels that this exposure to cold is responsible for her respiratory problems, inasmuch as she seems to get worse every time she goes to work."

The discharge diagnosis was "Recurrent Bronchitis."

In this cause we are again confronted with an impossible task of decision. This is ascribable to the fact that this record is simply devoid of competent evidence as to (1) whether or not the malady complained of by petitioner had its origin and cause in a hazard incident to her employment; and (2) whether that malady is to be medically considered as an essential part or parcel or closely related, in a causal sense, to one of the specified compensable occupational diseases.

We are not content to determine the rights and liabilities, if any there be, of the parties to this cause without pertinent medical evidence directed to the above-mentioned factors.

In this dilemma, the judgment of the court below will be reversed and the case remanded to the Circuit Court of Knox County for retrial.

DYER, CHIEF JUSTICE, HUMPHREYS and McCANLESS, JUSTICES and JENKINS, SPECIAL JUSTICE, concur.