**AMERICAN INSURANCE COMPANY a/k/a Fireman's Fund American Insurance Company, Appellant,**

v.

**Eugene ISON, Appellee.**

Supreme Court of Tennessee.

Jan. 13, 1975.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, for appellant.

James W. Justice, Privette, Mann & Justice, Knoxville, for appellee.

## OPINION

BROCK, Justice.

This is a workmen's compensation proceeding. The question for our decision is whether or not there is any material evidence to support the finding of the trial court that the appellee is disabled by reason of an occupational disease for which compensation is afforded by T.C.A., Section 50–1101.

On February 2, 1973, the appellee was injured by an accident arising out of and in the course of his employment when a large rock fell upon him as he stood in a hole which was being prepared for the foundation of a large building. The blow from the rock caused the appellee to suffer fractured ribs and a partially collapsed lung. During the course of treatment for this injury, it was discovered by his physician that he suffered also from "chronic obstructive lung disease." The treating physician, Dr. Watson, referred the appellee to Dr. Swann, a specialist in the treatment of lung diseases. The latter undertook the treatment of the chronic obstructive lung disease which he continued until August 17, 1973, at which time the appellee reached maximum recovery. The appellee made a good recovery from the rib fractures and collapsed lung but, in the opinion of Dr. Swann, he suffers a permanent medical impairment of his body as a whole to the extent of 25 or 30 percent by reason of the chronic obstructive lung disease.

The appellee alleges in his complaint that "Dr. Swann is of the opinion that the plaintiff's history of having occupational dust exposure in the course of his employment with the Johnson Drilling Company, Inc., is significant in his present illness and further that this dust exposure has aggravated the plaintiff's chronic obstructive lung disease."

The defendant insurance carrier for the employer admitted the accidental injury from the falling rock but denied that the employee had contracted a compensable occupational disease arising out of and in the course of his employment by the Johnson Drilling Company, Inc. The defendant also denied that the employee had given the prescribed statutory notice but has since waived and abandoned that defense. In addition to awarding benefits for the broken ribs and collapsed lung, the trial court also found and adjudged that the employee was permanently and partially disabled to the extent of 50 percent of the body as a whole by reason of an occupational disease which arose out of and in the course of his employment.

The defendant has appealed contending that there is no material evidence to support the finding of the trial court that the plaintiff suffers from an occupational disease for which benefits are afforded by T.C.A., Section 50–1101.

The appellee is a married sixty-three year old male with a third grade education. After engaging in numerous employments of hard labor, he began working for the Johnson Drilling Company, Inc., the employer in this case, in 1965 as a "hole man." He customarily worked in holes 50 to 80 feet deep operating a pneumatic jackhammer drill. He testified that his work environment was "a dust fog." Further, "It's just like emptying a flour sack in there and it stays down there. There is no vacuum to suck it out . . . . That's my job every day." Such was the appellee's work environment from his employment in 1965 until the date of the accident

in February, 1973. He began to have breathing problems in 1969 which were a little worse in 1970 and continued to worsen until the February, 1973, injury. This breathing problem was also worse following the February, 1973, injury. The appellee testified "I know I couldn't go now." He now takes "breathing tablets" prescribed for him by Dr. Swann.

Dr. Swann's deposition, taken December 14, 1973, was introduced into evidence. He is a thoracic surgeon whose qualifications were admitted. He first saw the appellee on April 11, 1973, upon referral from Dr. Watson, the original treating physician. He related the history of the February, 1973, injury, the broken ribs, punctured lung, pneumonia, coughing and spitting of yellow sputum and "smothering for three to four years duration." He testified that X-rays showed hyper-inflated lung fields, "that is to say, an emphysematous chest." A bronchoscopy showed "bronchitis and airways obstruction." Additional special X-rays of the lungs showed "scarring and some calcified densities." His diagnosis was that the employee suffers from "moderately severe chronic obstructive lung disease." On cross-examination Dr. Swann testified that emphysema and bronchitis are other names for the disease which he diagnosed in the appellee. With respect to the question whether or not the employee's lung disease was the result of breathing rock dust in his work environment, Dr. Swann testified:

"He has a history of working with a jackhammer, drilling hard rock for seven or more years. That represents a work history which is compatible with occupational dust disease. He has the complaints of dyspnea and cough that go with that disease. He has the X-ray findings that go with it. He does not have nodular fibrosis to make a diagnosis of silicosis, but he has X-ray changes consistent with chronic obstructive lung disease, and he has a disability which is measured by a pulmonary function test (breathing test) and I would consider

this chronic obstructive lung disease that he has is related to his dust exposure, either causally or by aggravation  . . .

"Would it be within the realm of speculation, Doctor, as to whether or not the breathing of the dust actually caused the obstructive lung disease as opposed to aggravating the condition?

"We can't say that it caused it, because we know that this disease occurs in people who have no such histories.

"But you do feel that you can say with a reasonable medical certainty that there was an aggravating influence upon the lungs?

"Yes."

At the request of the employer, the appellee was also seen and examined by a Dr. Domm approximately one month prior to the trial, but this physician was not called as a witness. There is no other medical evidence in the record.

■ At the outset, we note that any right to recover under the workmen's compensation law for an alleged occupational disease must be based upon T.C.A., Section 50–1101 et seq. Thus, before passage of the "occupational disease" statute, it was held in Meade Fiber Corporation v. Starnes, 147 Tenn. 362, 247 S.W. 989 (1923) that a disease caused by breathing dust caused by the work of moving sacks containing a chemical used in the employer's business is not a compensable "injury" because it did not result from an *accident*. Accord: Gabbard v. Proctor & Gamble Defense Corporation, 184 Tenn. 464, 201 S.W.2d 651 (1947); Greener v. E. I. duPont deNemours & Co., 190 Tenn. 105, 228 S.W.2d 77.

■ Secondly, there can be no recovery for "aggravation" of an occupational disease which pre-existed the current employment. Brooks v. Gilman Paint Company, 208 Tenn. 595, 347 S.W.2d 665 (1961); Davis v. Yale & Towne, Inc., 221 Tenn.

18, 423 S.W.2d 862, 864 (1967). This is because subparagraph 6 of T.C.A., Section 50–1101, provides:

"It must appear to have had its *origin* in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction." (Emphasis added.)

■ Next, to establish that the occupational disease "had its origin in a risk connected with the employment and . . . flowed from that source as a natural consequence . . ." medical experts or other suitable expert testimony is required because the conclusions called for can result only from expert training and education not to be found in laymen such as judges. Knoxville Poultry and Egg Company, Inc. v. Robinson, 224 Tenn. 124, 451 S.W.2d 675 (1970).

■ Finally, if the alleged occupational disease is not one of those named in T.C.A., Section 50–1101, it must be established by medical or other appropriate expert witnesses that it is so "closely related" to one of the named occupational diseases that it too, should be considered "occupational." By "closely related" we mean (1) that the disease produces pathological effects in the employee which are substantially the same as those resulting from one of the named occupational diseases and (2) the disease in question is caused by the particular hazards of the employment which are known to also cause one of the named occupational diseases.

■ We are aware that there are certain opinions of this Court in which diseases such as bronchitis and emphysema have been held to be occupational diseases although said opinions do not recite any medical evidence to support such findings, e.g., Smith v. Tennessee Furniture Industries, Inc., 208 Tenn. 608, 348 S.W.2d 290 (1961). We must assume that although such opinions fail to disclose it, there was evidence in the record from expert witnesses to sustain the finding that the particular disease was "closely related" to one of the named occupational diseases as above described, and, also, that it arose out of the hazards of the employment. Certainly it cannot be considered that such diseases have been judicially established to be occupational diseases so that there is no longer any necessity of proving the factors hereinabove set out by expert testimony.

In the *Robinson* case, *supra*, this Court stated:

"In this cause we are again confronted with an impossible task of decision. This is ascribable to the fact that this record is simply devoid of competent evidence as to (1) whether or not the malady complained of by petitioner had its origin and cause in a hazard incident to her employment; and (2) whether that malady is to be medically considered as an essential part or parcel or closely related, in a causal sense, to one of the specified compensable occupational diseases.

"We are not content to determine the rights and liabilities, if any there be, of the parties to this cause without pertinent medical evidence directed to the abovementioned factors." Id., at 676, 677 of 451 S.W.2d.

We are equally frustrated after having reviewed the record in this cause. Apparently, so was the trial judge for he stated:

"Dr. Swann has said he would consider this lung disease is related to his dust exposure either causally or by aggravation. Actually he perhaps should have been asked which is more likely, and he wasn't asked which is more likely, but if he was, it would often relate back to the history."

Dr. Domm, as we have already noted, was not called at all as a witness and the examination of Dr. Swann left much to be desired.

The record contains no evidence to show that the employee suffered from the diagnosed "chronic obstructive lung disease" prior to his employment with the Johnson Drilling Company, Inc., but, Dr. Swann speaks of "aggravation" as though appellee did have the disease prior to his employment. No attempt was made in the examination of Dr. Swann to determine whether or not the chronic obstructive lung disease suffered by appellee was closely related to silicosis or one of the other named occupational diseases.

As was done in the *Robinson* case, *supra,* we reverse the judgment and remand this case to the Circuit Court of Knox County for a new trial.

All costs shall be adjudged against the employee.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.