OPINION
BROCK, Chief Justice.
In this workmen’s compensation case the defendant, Penn-Dixie Cement Industries, Inc., appeals from a decision in favor of the plaintiff, Samuel Austin Totherow, who was awarded permanent total disability benefits. The defendant contends that there is no material evidence in the record to support the finding of the Chancellor that the plaintiff’s lung condition is an occupational disease compensable under T.C.A., § 50-1101.[1] Supporting its contention the defendant asserts the following propositions: (1) The plaintiff’s condition did not have its origin in a risk connected with the employment which flowed from that source as a natural consequence; (2) the opinions and conclusions of the plaintiff’s medical expert were not supported by pathological findings and medical knowledge; and (3) the plaintiff’s condition is not so closely related to one of the named occupational diseases that it should be considered occupational.
The facts leading up to this suit are not in dispute. In February of 1968 the plaintiff went to work in the defendant’s cement manufacturing plant where he worked regularly until August 18,1975. On that date, Mr. Totherow became ill on the job and left work early to see his family physician who advised him to stay off work for a while. In September of 1975 the plaintiff consulted a thoracic surgeon, Dr. Spires K. Whit- *376 taker, who discovered a tumor in the upper lobe of his right lung; a pneumonectomy was subsequently performed. Dr. Whittaker’s final diagnosis was anoplastic carcinoma of the right lung and severe pulmonary emphysema. All of the medical experts who testified in this case concurred in Dr. Whittaker’s diagnosis.
The proof revealed that Mr. Totherow was forty-two years of age when his illness was discovered and had smoked approximately a pack of cigarettes per day for 25 years.
The plaintiff filed a complaint on December 12, 1975, asserting that he was “permanently disabled from any type of labor as a result of the disease silicosis, emphysema and pulmonary fibrosis, all akin to silicosis, which condition is traceable to his long employment in the dusty atmosphere in defendant’s plant.” Proof was introduced that the burner floor where the plaintiff worked for six and one-half years was so dusty that it required sweeping several times a day. A study in March of 1972 also established that 50% of the dust emitted from an adjacent smoke stack was of particulate size ten microns or less. A medical expert for the defendant testified by deposition that dust particles of 10 microns or less can be breathed into the upper respiratory pathway and that particles of three microns or less can reach the lower pulmonary airways. The March, 1972, study also revealed that the cement mixture processed at the plant contains 2 to 3% sand. Silica, which is another name for silicon dioxide, is the chief constituent of sand.
Dr. Whittaker testified at trial that he was of the opinion that the plaintiff’s condition developed from working in a highly dusty atmosphere. He stated that the plaintiff’s cigarette smoking made him more subject to the condition but that his lung damage was greater because of the dust. The doctor concluded that cigarette smoking “might have brought it on ten or fifteen years later, but I think that the cement plus the cigarettes brought it on at forty-two years of age.”
Medical testimony on behalf of the defendant asserted that the plaintiff’s condition was mostly attributable to cigarette smoking. The defendant’s witnesses based their medical opinions on x-rays, hospital records, and a specimen from the removed right lung. Dr. Whittaker, however, was the only physician to physically examine and treat the plaintiff.
In a resolution of this case our inquiry is, of course, limited to a determination of whether there was material evidence to support the Chancellor’s finding that the plaintiff suffered permanent total disability from an occupational disease. We conclude that there is material evidence to support such a finding and we, therefore, affirm his decree.
I
The defendant first asserts that there is no medical evidence to support the finding that the plaintiff’s condition “had its origin in a risk connected with the employment and . . flowed from that source as a natural consequence.” We disagree. The highly dusty atmosphere of the cement plant is well documented in the record. Moreover, Dr. Whittaker testified that in his medical opinion this dusty condition caused the plaintiff’s emphysema. Even one of the defendant’s experts did not “rule out” the possibility that the plaintiff’s exposure to dust contributed to his emphysema.
We note that the plaintiff does not contend that cement dust directly causes carcinoma. However, both Dr. Whittaker and one of the defendant’s experts stated that emphysematous lungs are more likely to become cancerous. Upon cross-examination Dr. Whittaker also made the following response when questioned whether it was more likely that the plaintiff’s cancer and emphysema were related to his cigarette smoking:
“He had two agents that brought on his cancer and his emphysema. I think that the cement was the more important agent. Both agents were a factor, but the more important was the cement dust, the dust.”
*377 We regard the foregoing evidence as sufficiently material to support a finding that the plaintiff’s condition originated with and flowed from his employment as a natural consequence.
II
The defendant also argues that Dr. Whittaker’s opinions and conclusions were not supported by pathological findings and medical knowledge. Again we do not agree. Dr. Whittaker has been a thoracic surgeon for forty years and has performed over five thousand lung operations. He was also the only physician to testify in this case who examined and treated the plaintiff. In considering the credibility of expert medical testimony a doctor’s background and his personal exposure to a patient’s condition are, of course, significant factors. Moreover, contrary to the defendant’s position, Dr. Whittaker made reference to three medical writings which at least in part support his conclusion that exposure to high levels of cement dust can cause emphysema and eventually result in carcinoma.
III
The defendant finally asserts that there is no material evidence to support the finding that the plaintiff suffers from an occupational disease as defined in T.C.A., § 50-1101. Under subsection 3 of that provision, silicosis is expressly listed as an occupational disease. Defendant asserts by way of its medical expert on pathology that no evidence of silicosis was found in the specimen of the plaintiff’s right lung. This conclusion was in no way rebutted by the plaintiff’s medical proof. However, the Chancellor agreed with the plaintiff’s contention that his condition is so closely related to silicosis that it should be considered occupational.
In American Insurance Company v. Ison, 519 S.W.2d 778 (Tenn.1975), this Court established the following criteria for determining whether a disease should be considered occupational under the statute:
“[I]f the alleged occupational disease is not one of those named in T.C.A., Section 50-1101, it must be established by medical or other appropriate expert witnesses that it is so ‘closely related’ to one of the named occupational diseases that it too, should be considered ‘occupational.’ By ‘closely related’ we mean (1) that the disease produces pathological effects in the employee which are substantially the same as those resulting from one of the named occupational diseases and (2) the disease in question is caused by the particular hazards of the employment which are known to also cause one of the named occupational diseases.”
In the case before us, Dr. Whittaker testified that the pathological effects of the plaintiff’s severe emphysema were the same as the effects of silicosis. The first part of the Ison guidelines is thereby satisfied.
However, we now must consider the more difficult question of whether the breathing of cement dust is “known to also cause” silicosis. We have already held there is material proof that the plaintiff’s condition was caused by the dusty atmosphere of the plant. We have also noted that the cement mixture which is processed at the plant is made up at least in part of a silicon based material. While there does not appear to be any direct testimony from Dr. Whittaker stating that he was of the opinion that cement dust is known to cause silicosis, we think it is implicit in his conclusions that the inhalation of silicon based material can eventually cause silicosis. We, therefore conclude that this case also comes within the second guideline set forth in Ison.[2]
For the foregoing reasons, we concur in the finding that the plaintiff’s lung condition is a compensable occupational disease and affirm the Chancellor’s decree. Costs *378 of this appeal are adjudged against the defendant.
FONES, HENRY and HARBISON, JJ., and TODD, Special Justice, concur.

. When the present claim arose only certain listed occupational diseases were covered by this provision of the Tennessee Workmen’s Compensation Act. In 1977 an amendment extended compensation to diseases of the heart, lung and hypertension arising out of and in the course of all types of employment. See T.C.A., § 50-1001 (Supp.1978); Allied Chemical Corp. v. Wells, 578 S.W.2d 369, 370 at n. 1 (Tenn. 1979).

. In reaching this conclusion, this writer has not abandoned the position taken in the dissent in Martin Brothers Container and Timber v. Lynch, 551 S.W.2d 687, 690 (Tenn.1977). The case at bar is distinguishable from Lynch for the simple reason that cement dust contains a silicon based material whereas sawdust, the emphysema causing agent at issue in Lynch, does not.