**L.B. STATEN, Plaintiff-Appellant,**

v.

**ROYAL INSURANCE COMPANY, Defendant-Appellee.**

Supreme Court of Tennessee.

Jan. 23, 1984.

Bart Durham, Joseph M. Dalton, Nashville, for plaintiff-appellant.

Daniel Finch, Daniel L. Wischhof, Nashville, for defendant-appellee.

OPINION

BROCK, Justice.

The plaintiff in this worker's compensation case was awarded benefits for temporary total disability but was denied benefits for permanent partial disability and for certain medical expenses arising out of an alleged accidental injury on Wednesday, May 27, 1981. The plaintiff appeals from

that portion of the judgment of the trial court denying him benefits for his alleged permanent partial disability and certain medical expenses.

The plaintiff was employed by Bi-Rite Foods to load and unload truck-trailers of groceries. His theory in this case was that his work activities which involved lifting boxes of groceries, some of which weighed between 60 and 80 lbs., led to a debilitating muscle spasm which he suffered at home after leaving work on May 27, 1981, and which prevented him from being able to get out of bed on the morning of May 28, 1981, due to sharp pain in his lower back. The plaintiff, who has only a fourth grade education and has worked in strenuous activities such as manual labor, warehouse and construction work all of his life, reported his injury to his supervisor. On June 2, 1981, the plaintiff entered the hospital on the first of two separate occasions which subsequently totalled 31 days.

Two medical experts testified. Dr. David Gaw, an orthopedic surgeon, first saw the plaintiff on July 7, 1981, and found the plaintiff to be experiencing pain, spasm and tenderness in his low back. He next saw the plaintiff on June 17, 1982. At that time plaintiff continued to have spasms in the muscle of his low back and movement of his low back was limited. At that time x-ray examination showed a narrowing of the interspace between L–5 and S–1. Dr. Gaw concluded that

"... he had a degenerative lumbar disc disease with a superimposed back strain on that condition."

He further testified that the lifting of heavy boxes which the plaintiff had done over the past nine years in his employment "could cause" the symptoms which the plaintiff suffered. Dr. Gaw further testified that the plaintiff was not able to do the kind of work which he was doing for his employer at the time of his injury because he could not bend, twist or lift heavy objects. He testified that the plaintiff had a 10% impairment of his body as a whole.

Dr. Gardner L. Dixon, a general practitioner, also testified. He stated that he first examined the plaintiff on July 17, 1981, at which time his low spine was tender and that he placed the plaintiff in the hospital where he remained for 13 days of treatment. He further testified that in October, 1981, he again saw the plaintiff and placed him in the hospital for treatment for an additional 18 days. Dr. Dixon further stated:

"I do not think he can do this particular job ever again .... It will just be a repetitive thing from now on and it probably will get worse as his age increases."

He stated that the plaintiff was not able to do lifting. Dr. Dixon testified that the plaintiff had some spondylolisthesis and that "I don't know what caused it in this gentleman."

The trial judge decreed:

"1. The plaintiff is entitled to temporary total benefits from May 27, 1981, through December 12, 1982, less two weeks while he worked at the company.

"2. The plaintiff is entitled to no permanent disability of any nature.

"3. The plaintiff is entitled to no additional medical payments.

"It is, therefore, ordered, adjudged and decreed that the plaintiff have and recover from the defendant temporary total benefits from May 27, 1981, through December 12, 1982, less two weeks while he worked with the company, in the amount of $9,350.00, and that the defendant (sic) is granted no permanent disability and he is denied any medical payments; ..."

In response to a motion made by the plaintiff the trial judge later entered an additional order in which he made the following statement:

"It is therefore ordered, adjudged and decreed that if, on appeal the Tennessee Supreme Court should hold that there exists a causal connection between the accident experienced by the plaintiff and his subsequent injuries so as to make said injuries compensable under the Tennessee Worker's Compensation Act, the court

finds that the amount of permanent partial disability the plaintiff retains is 25%."

Moreover, our examination of the record reveals that at the conclusion of the hearing the trial judge in stating his findings and conclusions made these observations:

"The thing that bothers me from Dr. Dixon's testimony is the fact that he was not only suffering from degenerative arthritis, but also the condition of spondylolisthesis. Of course, Dr. Gaw said he wasn't, but without a doubt the man has a physical back problem which is greater and was superseded by a participating factor in his disability. He did have muscle strain, apparently, but the burden of proof is on the plaintiff, and from what the doctors say it seems it could be cleared up rather quickly.

"Therefore, he shall receive temporary total disability, due to the muscle strain on the job. I find that his total disability is due to the degenerative arthritis and his spondylolisthesis. Neither doctor was asked directly whether his disability was based on the degenerative condition or the accident.

"Based on the records here, I will award him temporary total disability, but I don't see a connection between his long hospital stays and muscle strain. I think it is unreasonable and unnecessary for that particular condition."

Thus, we are presented with a case in which the trial court has found that the plaintiff employee suffered a compensable injury and that he was entitled to benefits for temporary total disability but was not entitled to benefits for any permanent partial disability or for medical expenses incurred in treatment. With respect to the plaintiff's claim for benefits for partial disability, we are unable to reconcile the trial court's finding that the plaintiff's permanent partial disability of 25% of the body as a whole "is due to the degenerative arthritis and his spondylolisthesis" with his acknowledgement in his very next sentence that "neither doctor was asked directly whether his disability was based on the degenerative

condition or the accident." When faced with similar situations in *Knoxville Poultry & Egg Co. v. Robinson,* 224 Tenn. 124, 451 S.W.2d 675 (1970) and *American Ins. Co. v. Ison,* Tenn., 519 S.W.2d 778, 781 (1975) we reversed the judgment of the trial court and remanded for a new trial. In each of those cases the issue was whether or not the plaintiff employee suffered from a disease which was sufficiently "closely related" to a listed occupational disease as to be entitled to compensation but the principle there employed is equally relevant to the instant case. In the *Robinson* case, *supra,* we concluded:

"We are not content to determine the rights and liabilities, if any there be, of the parties to this cause without pertinent medical evidence directed to the above-mentioned factors." *Ibid.* at 677.

Authority need not be cited for the well settled rule in this state that the cause and permanency of the disability of an employee in a worker's compensation case must be determined from the evidence of medical experts. As we said in the *Ison* case, *supra,*

". . . medical experts or other suitable expert testimony is required because the conclusions called for can result only from expert training and education not to be found in laymen such as judges." *Ibid.* at 781.

Here, the trial judge not only has admitted that "neither doctor was asked directly whether his disability was based on the degenerative condition or the accident," but one of the medical experts, Dr. David Gaw, has testified that in his opinion the plaintiff's job of lifting heavy objects for the past nine years prior to his injury could have caused the symptoms which he suffers. The other expert, Dr. Dixon, testified that the plaintiff has some spondylolisthesis and that "I don't know what caused it in this gentleman."

With the record in this condition, we conclude that in the interest of justice the judgment of the trial court should be reversed and this cause remanded for a new trial, as was done in the *Robinson* and *Ison* cases, *supra.* Costs incurred upon appeal

are adjudged against the plaintiff-appellant.

FONES, C.J., HARBISON and DROWOTA, JJ., and HUMPHREYS, Special Judge, concur.