Betty A. YOUNT, Plaintiff–Appellant,

v.

HENRITE PRODUCTS, INC., et al.,
Defendants–Appellees.

Supreme Court of Tennessee,
at Knoxville.

July 18, 1988.

Danny M. Hryhorchuk, Morristown, for plaintiff-appellant.

Donald B. Oakley, Morristown, for defendants-appellees.

OPINION

DROWOTA, Justice.

In this Workers' Compensation case, the Plaintiff, Betty A. Yount, was denied benefits for an occupational disease that resulted from 26 years of exposure to rubber dust and chemical fumes in a plant operated by Defendant, Henrite Products, Inc. The Chancery Court for Hamblen County ruled that the medical evidence showed that Plaintiff did not retain a permanent total disability as a result of her exposure. On appeal, Plaintiff raises three issues: (1) whether the trial court properly evaluated the extent of Plaintiff's disability; (2) whether any material evidence supports the findings of the trial court on permanent and total disability; and (3) whether the trial court erred in failing to award her any benefits for permanent partial and temporary total disability based on the evidence in the record.

Plaintiff was 52 years old at the time of trial and had worked in Defendant's plant for 26 years. Her job was to remove excess rubber from the outside rim of electric motor mounts manufactured by Defendant. This position was known as an outside buffer and consisted of running a rotating, circular wire brush attached to an electric motor. The excess rubber, which was black in color, was removed by the brush. Although the plant had an exhaust ventilation system, this system did not function adequately, causing the particles of buffed rubber to become airborne. This black rubber dust settled on the machinery and the

plant floor as well as the clothes, hair, and faces of the employees. It was also inhaled by the employees, including Plaintiff. In addition, at least until 1976, the rubber compound used to coat the motor mounts was mixed at the plant, causing the fumes and the powder from which it was made to permeate the plant. Plaintiff's prolonged exposure gradually caused her to suffer various symptoms until finally on April 7, 1983, she could no longer work; she went to see Dr. John H. Kinser on this date and was immediately admitted by him to the hospital, where she remained until April 16, 1983. She was discharged with a diagnosis of chemical bronchitis, arthritis, sinusitis, and longstanding rheumatoid arthritis. She continued under Dr. Kinser's care until released for work on September 19, 1983. While she continued to display exposure symptoms, she was able to perform her work at Defendant's plant; however, on March 13, 1984, she again experienced an acute episode of chemical bronchitis and was forced to leave work. She has not worked since that time. Throughout this period, Defendant consistently denied that Plaintiff's condition was the result of exposure to the rubber dust and fumes circulating in the plant environment.

On March 12, 1985, Plaintiff initiated this lawsuit, seeking benefits for permanent total disability and for medical attendance. The Complaint included a prayer for general relief as well. On August 19, 1985, and November 1, 1985, Defendant filed its Answer and an Amendment to Answer, denying that Plaintiff was entitled to any relief. Discovery ensued and on August 29, 1986, a hearing was held in Chancery Court.

At trial, Plaintiff testified that she has a high school education and has no other work experience than her employment for Defendant. When she started working at the plant over 26 years ago, she was in good health. She described the working conditions at the plant that led to her disability. Rubber dust covered her clothes and face daily. Chemical fumes from the rubber compound were also prevalent in the plant. She and other employees complained but nothing was done about ventilation. She stated that she breathed rubber dust everyday and would cough up sputum with particles of the material in it. She is no longer able to breathe easily and is limited in the types of activities she can do. Suffering from shortness of breath upon exertion and sensitivity to wind, dampness, and air conditioning, she is unable to do chores around the farm on which she lives with her sister and can only perform simple domestic chores such as washing the dishes. In addition, she has arthritis in her hands and wrists but she does not find this condition particularly disabling. She testified that she is unable to obtain employment due to her disability. Her condition and inability to work have caused her to experience anxiety and depression.

The first acute episode she experienced was on April 7, 1983. Upon leaving work, she went to see Dr. Kinser, who hospitalized her until April 16, 1983, for treatment. Remaining off from work on the doctor's recommendation, she took medication for her symptoms and by September, 1983, she was able to return to work. Although she experienced problems working, under Dr. Kinser's care she was able to work from September 12, 1983, until March 13, 1984, when she again suffered an acute episode of chemical bronchitis so severe that she had to leave work. After reporting to her foreman, she returned to Dr. Kinser, whom she now must see about once every two weeks. Dr. Kinser is her family doctor and has been treating her regularly for many years. She stated that Defendant refused to treat her claim as a work-related disability. Following this episode in March, 1984, she could no longer expose herself to the contaminants in Defendant's plant and was unable to return to work. She has continued to take a number of medications for her condition under Dr. Kinser's direction. Dr. Kinser referred her to Dr. William K. Rogers for evaluation on April 1, 1985, over a year after she had quit working in the contaminated environment of Defendant's plant. She was on medication and was not having any problems on the day he examined her. Subsequently, Defendant referred her to Dr. Leon J. Bogartz for evaluation on June 16, 1986, more than two

years after she had left Defendant's employment. She was medicated and was experiencing no symptoms at the time of this examination.

Ms. Margaret Horsley testified for Plaintiff. She had worked for Defendant in the 1960's, had left, and then had returned to work in the plant in 1976. She knew Plaintiff during both times that she worked for Defendant. She corroborated Plaintiff's description of the poor working conditions of the plant, the contaminated environment, and the inadequate ventilation system. She stated that the employees were blackened with rubber dust by each day's end. Rubber dust got in their clothes, on their faces, in their eyes, noses, and throats. According to Ms. Horsley, Plaintiff's health had deteriorated between the time she worked with her in the 1960's and when she returned to work in 1976. The conditions at the plant had remained unchanged throughout this period. Plaintiff had developed a cough over the years of the witness's absence. She saw Plaintiff's eyes water and become irritated. Plaintiff complained to Defendant that she was having respiratory difficulties.

Mr. Carl Crocker was also called to testify for Plaintiff. He was formerly employed by Defendant to mix the rubber compound used in the plant. He knew Plaintiff while he worked at the plant and corroborated Plaintiff's and Ms. Horsley's descriptions of the plant conditions. When he mixed the chemicals used to compound the rubber, the machinery caused the black powder from which it was made to blow into the air and to circulate throughout the plant. The ventilation system did not work properly but the complaints of the employees concerning conditions at the plant were ignored by Defendant. He stated that Plaintiff, like the other workers, was covered with black rubber dust by the end of the day.

Defendant called Mr. Rusty Moore to testify; he is presently the plant manager. He stated that the plant has a central ventilation system and that Defendant has never been cited for safety violations due to any inadequacy in the system, which is cleaned and maintained regularly. Defendant stopped mixing the rubber compound at the plant in about 1976 and now stored it pre-mixed. The same ventilation system has been in use since he started working as production manager in 1976. He admitted, however, that he has seen employees get rubber dust on them but denied that it has ever caused any problems for the employees.

The depositions of two medical doctors were placed into evidence. Dr. Kinser's deposition was taken on behalf of Plaintiff. He has been her family doctor for over 20 years. The first time he treated her for her present condition was on April 7, 1983, when she came to his office complaining of throat pain, sneezing, chills, hoarseness, nasal congestion, and productive cough. He admitted her to the hospital for treatment the same day; she was discharged on April 16, 1983, with a diagnosis of chemical bronchitis, arthritis, sinusitis, and longstanding rheumatoid arthritis. He has observed Plaintiff cough up sputum containing material having the consistency of the rubber dust that contaminated Defendant's plant. He unequivocally stated that her condition was caused by prolonged exposure to this dust. Following her treatment during the months after this April, 1983, acute episode, Plaintiff became asymptomatic and he allowed her to return to work in September, 1983, subsequent to which another acute episode occurred in March, 1984.

Dr. Kinser testified that she has been sensitized by her chemical bronchitis to the types of noxious substances in Defendant's plant. He recommended that she not work in this environment and wrote to Defendant on December 8, 1983, to this effect. By March, 1984, she again suffered from the same symptoms as she had in April, 1983, which symptoms were all secondary to chemical bronchitis. In March, 1984, he diagnosed her as having chronic chemical bronchitis with recurring acute episodes. He has continued to treat Plaintiff and has prescribed eleven medications to alleviate her symptoms and to assist her breathing. If she continues to deteriorate, she will eventually manifest chronic obstructive

lung disease; however, at this point, she does not have an obstructive lung disease. To confirm his diagnosis, he referred Plaintiff to Dr. Rogers in April, 1985, and he interpreted Dr. Rogers' findings as being consistent with his diagnosis of chronic chemical bronchitis because they ruled out any other explanation for her persistent condition. When cross-examined about certain findings of Dr. Rogers,[1] Dr. Kinser stated that Dr. Rogers saw Plaintiff while she was medicated and not during an acute episode; chemical bronchitis is not a condition that is revealed by objective tests. A person can have normal lung function but still have chemical bronchitis. He obtained a second opinion from Dr. Omer C. Renner in August, 1985. Again, Dr. Renner's findings were consistent with his diagnosis of chemical bronchitis. Dr. Renner performed a bronchoscopy on Plaintiff and determined that her lungs displayed pigment laden macrophages, indicating exposure to irritants. Nevertheless, her x-ray was normal and she demonstrated no obstructive lung disease at that time. In Dr. Kinser's opinion, her condition was permanent and she would continue to have chronic chemical bronchitis but could avoid the recurrence of acute episodes by remaining out of a contaminated environment such as Defendant's plant. Dr. Kinser stated that Plaintiff's condition will not improve and could deteriorate and that she retains a 100 percent total and permanent anatomical disability, requiring continued treatment. As a result of her condition, she is sensitive to changes in the weather and other aggravating factors.

Defendant offered the deposition of Dr. Rogers, a thoracic surgeon. Dr. Rogers stated that he examined Plaintiff only once for evaluation on referral from Dr. Kinser. Her pulmonary functions were within normal ranges and her chest x-ray was normal as well. He found no residual evidence of obstructive lung disease. In his opinion, Plaintiff is able to work but should not return to a work environment like Defendant's plant as she seems to have an allergic reaction to it.[2] He conceded that she could very well have chemical bronchitis but when he examined her she was not having an acute episode and was not exhibiting any symptoms; she was, however, on eleven medications that day. Dr. Rogers qualified his opinion as to Plaintiff's condition, stating that he could not rule out Dr. Kinser's diagnosis because "the doctor who saw the patient during the acute episode would be in the best position to" diagnose Plaintiff's problem. Since he saw her only once for a limited purpose and is not the treating physician, he testified that he would be speculating to offer any opinion about Plaintiff's condition beyond what he found on the particular day he saw her. He would not state a conclusive diagnosis and conceded that the rubber dust in Plaintiff's lungs was not of a consistency that would contrast on an x-ray. He saw no permanent scarring or other evidence of pulmonary disease but she could have breathed the material for 24 years without its being revealed on an x-ray. His qualified opinion was that, based on his examination, she was not anatomically disabled from employment that would not aggravate her condition. If she did have chronic chemical bronchitis, further exposures would result in a recurrence of acute episodes.

Defendant sent Plaintiff to Dr. Bogartz for evaluation in June, 1986, and the parties stipulated that the report submitted by Dr. Bogartz to Defendant would be used in lieu of taking his deposition. In a transmittal letter to Defendant's attorney, Dr. Bogartz stated that his opinion as to Plaintiff's condition was limited to what he found on the day he examined her. While the results of the tests of her lungs were generally within normal ranges, he did find some marginal abnormality in her breathing capacity in some respects, demonstrating some "minimal change compatible with

---

1. Dr. Rogers' findings had been reported to Dr. Kinser in a letter of April 8, 1985, in which he stated that Plaintiff's tests and x-rays were normal but recommended that she refrain from working in a contaminated environment.

2. That Plaintiff worked for over 20 years without experiencing this allergic reaction is not explained by Dr. Rogers.

small airway disease ... [but it] is probably of no clinical significance at this time." He found no objective indications of obstructive pulmonary disease in his examination, laboratory tests, or x-ray; however, he then qualified his opinion, stating that "I do not have this patient's medical records to review at this time and could not make any comments about her illness from 1983 through the present time. If indeed her work environment did cause exposure to significant dust and fumes there may be a causal relationship with her symptoms in 1983...." Significantly, he then added that "the demonstration of bronchial hyper reactivity would in [and] of itself be non specific." Nevertheless, having found no objective evidence of pulmonary disease, he did not believe that Plaintiff was disabled.

On October 13, 1986, Judgment was entered in this case, incorporating the Chancellor's Memorandum Opinion of September 5, 1986, and dismissing Plaintiff's action. The trial court found that rubber dust in the environment of Defendant's plant caused Plaintiff to suffer acute episodes of chemical bronchitis. Considering the medical evidence to be conflicting, the Chancellor concluded that Plaintiff was not permanently and totally disabled. No award for medical attendance or for temporary total disability benefits was made, however, by the trial court. A Motion for a New Trial was filed on November 12, 1986, and denied on February 2, 1987. Notice of Appeal was duly filed.

The standard of review in this case is under the material evidence rule. *See Alley v. Consolidation Coal Co.*, 699 S.W.2d 147, 147–148 (Tenn.1985). Nevertheless, "while the Supreme Court is bound by the findings of a trial judge on questions of fact if there is material evidence to support those findings, it is not bound by conclusions drawn by the trial judge from undisputed facts and it may reach a different conclusion from the trial judge on the same findings of fact." *Prost v. City of Clarksville Police Dept.*, 688 S.W.2d 425, 427 (Tenn.1985) (citations omitted). Moreover, we have on occasion been faced with material evidence cases in which the trial court so fundamentally misconstrued the medical evidence that we found it necessary to remand such cases for further proceedings. *See, e.g., Haley v. Dyersburg Fabrics, Inc.*, 729 S.W.2d 665, 666–667 (Tenn.1987). In other cases, we have found that the trial court's interpretation of expert testimony unduly focused on isolated portions without properly considering it in its entirety. *See, e.g., Vandergriff v. Bituminous Casualty Corp.*, 692 S.W.2d 20, 22 (Tenn.1985); *International Yarn Corp. v. Casson*, 541 S.W.2d 150, 152 (Tenn.1976). In addition, a number of material evidence cases have been remanded for further consideration when the record was so inadequate or the trial court's findings so nonspecific, unclear, or conflicting that the Court could not determine whether the matter was fully adjudicated on its merits. *See, e.g., Staten v. Royal Insurance Co.*, 664 S.W.2d 65, 67 (Tenn.1984); *Johnson v. Schevenell Ready Mix, Inc.*, 608 S.W.2d 582, 584 (Tenn.1980); *Ware v. United States Steel Corp.*, 541 S.W.2d 107, 112 (Tenn.1976); *Uptain Construction Co. v. McClain*, 526 S.W.2d 458, 460 (Tenn.1975); *American Insurance Co. v. Ison*, 519 S.W.2d 778, 781–782 (Tenn.1975); *Floyd v. Tennessee Dickel Distilling Co.*, 225 Tenn. 65, 69, 463 S.W.2d 684, 686–687 (1971); *Knoxville Poultry & Egg Co. v. Robinson*, 224 Tenn. 124, 128, 451 S.W.2d 675, 677 (1970). Review under the material evidence rule does not require this Court to rubber stamp the results in a trial court when complete justice has not been done on the record made at trial. *Cf. City of Bolivar v. Jarrett*, 751 S.W.2d 137 (Tenn.1988).

■ While we find that material evidence in this record does support the trial court's determination that Plaintiff is not permanently and totally disabled, we cannot affirm the dismissal of the case. Both Dr. Rogers and Dr. Bogartz stated that Plaintiff is not completely disabled but they also heavily qualified their opinions and limited their findings to the one examination they each made of Plaintiff. Their findings were inconsistent with Dr. Kinser's only to the extent that Dr. Kinser believed Plaintiff was 100 percent disabled. The case was tried on the theory of perma-

nent total disability and their opinions are taken in that context. *Cf. Prost v. City of Clarksville Police Dept., supra; Crane Enamel Co. v. Jamison*, 188 Tenn. 211, 217 S.W.2d 945 (1949). Both Dr. Bogartz and Dr. Rogers conceded that chemical bronchitis would not be revealed by the objective tests they conducted and that the treating physician would be in a better position to diagnose this condition. All three doctors agreed that Plaintiff did not have any obstructive lung disease at this time. Dr. Renner's report to Dr. Kinser confirmed these diagnoses but also found that the bronchoscopy demonstrated pigment laden macrophages consistent with exposure to irritants. No other expert performed this procedure on Plaintiff. Dr. Kinser, Dr. Rogers, and Dr. Bogartz all agreed that a finding that Plaintiff had normal lungs would not preclude a diagnosis of chronic chemical bronchitis. No doctor ever stated that Plaintiff would have to exhibit either chronic or acute chemical bronchitis; rather, chronic chemical bronchitis can be a nonspecific condition that is aggravated by exposure to contaminants that in turn cause acute episodes to occur. Not only did Dr. Rogers refrain from making any conclusive diagnosis of Plaintiff's condition but he deferred to the diagnosis of the treating physician and expressly stated that he would be speculating to offer any opinion about Plaintiff's condition beyond what he found on the one day he examined her. Similarly, Dr. Bogartz, whose report is of limited utility and clarity, also qualified his opinion and agreed with both Dr. Rogers and Dr. Kinser that, in Dr. Bogartz' own words, "the demonstration of bronchial hyper reactivity would in [and] of itself be non specific." Dr. Bogartz did not exclude chemical bronchitis by his findings and stated that Plaintiff could have a condition caused by her exposure to irritants in Defendant's plant. Neither evaluating doctor disputed Dr. Kinser's diagnosis that Plaintiff had chronic chemical bronchitis. Neither evaluating physician attempted to offer any other explanation for Plaintiff's condition or to explain how she could have worked in Defendant's plant for so many years without a prior manifestation of an allergy. Dr. Kinser's diagnosis is the most probable explanation for Plaintiff's condition.

Considering each expert's testimony in its entirety, Dr. Kinser's diagnosis of Plaintiff's condition is, thus, an undisputed fact on this record. As the Court stated in *International Yarn Corp. v. Casson, supra*, at 152, "[i]solated portions of the testimony of a witness cannot be relied upon to sustain a finding of fact; the testimony of the witness must be considered in its entirety...." Moreover, the opinions of both Dr. Rogers and Dr. Bogartz are so qualified that they are essentially speculative insofar as they can be interpreted as attempting to address the validity of Dr. Kinser's diagnosis of chronic chemical bronchitis. *See, e.g., P & L Construction Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978). *Cf. Jackson v. Greyhound Lines, Inc.*, 734 S.W.2d 617, 620 (Tenn. 1987) (Causation and permanency cannot be speculative or arbitrary determinations from the evidence). Viewed in their context, the opinions of the two evaluating physicians merely established that Plaintiff was not experiencing an acute episode on the days they examined her, that she did not have an obstructive lung disease, and that they were not in a position to diagnose whether she had chronic chemical bronchitis because they had not been treating her. The trial court's reliance on the opinions of these two doctors is based on a misinterpretation of their findings, focusing unduly on certain portions of the evidence taken out of context and resting ultimately on speculative statements. Consequently, the only competent testimony regarding Plaintiff's condition is that of Dr. Kinser. His testimony establishes that Plaintiff has an occupational disease that was caused by prolonged exposure to contaminants in Defendant's plant and that this condition is permanent, limiting the types of employment she is able to perform. What his testimony does not prove, given the statements of the evaluating physicians, is the extent of Plaintiff's anatomical disability.

■ The law is well-settled that once causation and permanency are shown by

competent expert evidence, the extent of disability is determined by consideration of all the evidence, both lay and expert, and the degree of vocational disability is a function of a combination of many factors. *See, e.g., Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452, 458 (Tenn.1988); *Hinson v. Wal–Mart Stores, Inc.,* 654 S.W.2d 675, 677 (Tenn.1983); *Holder v. Liberty Mutual Ins. Co.,* 587 S.W.2d 372, 374 (Tenn.1979). The assessment of the degree of vocational disability is not dependent solely upon an expert's opinion or rating of anatomical disability. *See, e.g., Corcoran v. Foster Auto GMC, Inc., supra,* at 458. The record in this case contains material evidence that Plaintiff is not totally and permanently disabled. Causation and permanency being otherwise established, however, the trial court erred in failing to determine the extent of Plaintiff's permanent partial vocational disability based on all relevant factors. *See, e.g., Holder v. Wilson Sporting Goods Co.,* 723 S.W.2d 104, 107–108 (Tenn.1987) (Relevant factors discussed).

In addition, not only was the extent of permanent partial disability left unresolved on this record, but the period of Plaintiff's eligibility for temporary total disability was not determined as well. Temporary total disability is awardable during that time an employee is unable to work or until reaching maximum medical recovery from a work-related impairment. *See, e.g., Roberson v. Loretto Casket Co.,* 722 S.W.2d 380, 383–384 (Tenn.1986). When the trial court determined that Plaintiff's condition was caused by her exposure to rubber dust, she became eligible for temporary total disability during all periods in which she was unable to work while recovering from the disabling symptoms of an acute episode of her chronic chemical bronchitis. *See, e.g., Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 317 (Tenn.1987); *Bond v. American Air Filter,* 692 S.W.2d 638, 641 (Tenn.1985); *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). Furthermore, the failure to award

Plaintiff benefits for medical attendance, which are separate from benefits for either temporary or permanent disability, *e.g., City of Bolivar v. Jarrett, supra,* at 139, and *Floyd v. Tennessee Dickel Distilling Co., supra,* 225 Tenn. at 69–70, 463 S.W.2d at 686–687, constituted error on this record because causation is clearly shown and was found by the trial court.

On remand, the trial court may consider the record already made or take further evidence on the extent of Plaintiff's permanent partial disability.[3] Along with an award of medical attendance, temporary total disability benefits are to be determined for the period of April 7, 1983, to September 19, 1983, and for that following March 13, 1984.

Accordingly, because the trial court's judgment did not fully adjudicate this case on the merits of its record, we find it necessary to remand it for further proceedings not inconsistent with this opinion. The costs on appeal are taxed to Defendant.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

---

**3.** The existence of her permanent partial disability is *res judicata,* as is the issue of her perma-

nent total disability.