**Wanda CROSSNO, Plaintiff–Appellee,**

v.

**PUBLIX SHIRT FACTORY,
Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

Aug. 5, 1991.

John D. Burleson, Charleyn S. Arnold, Jackson, for defendant-appellant.

Ricky L. Boren, Jackson, for plaintiff-appellee.

## OPINION

ANDERSON, Justice.

In this workers' compensation action, the trial court determined that the plaintiff had sustained an occupational disease, and awarded 60 percent permanent partial disability benefits. The defendant appeals, contending that the plaintiff's lung disease was not caused by her employment, and furthermore, is not a compensable occupational disease because it pre-existed her employment. Alternatively, the defendant argues that the evidence of vocational disability does not support an award of 60 percent permanent partial disability benefits. We disagree and affirm.

The plaintiff, Wanda Crossno, is a 51–year–old woman with a ninth-grade education, whose lifetime employment experience consists of 29 years in factory work as a sewing machine operator. Her only other work experience was for her parents on the farm. She has smoked from one-half pack to a pack of cigarettes daily for 18 of the last 20 years.

In July of 1978, the plaintiff first sought treatment for shortness of breath from her personal physician, Dr. Sidney Ray. At that time Dr. Ray characterized her difficulties as a minor seasonal episode of asthmatic bronchitis caused by air-borne pollens. She was treated with medications,

which cleared up her condition in a short period of time.

She was employed by the defendant, Publix Shirt Factory, nine months later in April of 1979, as a sewing machine operator. The parties stipulated that formaldehyde was present in the workplace.

Beginning in 1981 and over the next eight years, Dr. Ray treated her for progressively worsening respiratory problems, culminating with several severe episodes requiring hospitalization in 1988 and 1989. Dr. Ray's diagnosis in April of 1988 was acute asthmatic bronchitis.

In August of 1988, suspecting that "there was a strong allergic component to her respiratory problem," Dr. Ray referred the plaintiff to an allergist, Dr. Richard H. Stout. Dr. Stout diagnosed her condition as chronic obstructive pulmonary disease with bronchial hyperactivity, and treated her with medication. On August 25, 1989, Dr. Stout wrote the following note to plaintiff's supervisor:

Wanda Crossno was seen in my office on August 23, 1989, suffering from severe bronchospasms. I feel this is caused by formaldehyde fumes inhaled while Wanda is at work.

After conferring with Dr. Ray, we feel that Wanda should take a 30 day sick leave. During this time, we will follow her to see if her condition improves.

After the 30-day sick leave, Dr. Stout noted a marked improvement in her pulmonary function studies and reported: "It is my impression that Wanda's work environment is an irritant to her asthma." Dr. Ray also noted significant improvement in the plaintiff's lung condition during her 30-day absence from work:

[I]n the time that she took off from work I would have to say that she did get significantly better and that this was our purpose in trying her off from work, to see if there was something in her work environment that was contributing to her illness and as I understand it she works around formaldehyde and this can very often cause breathing problems....

I think that the—her job in being around formaldehyde or particulate matter has certainly aggravated any respiratory condition she may have had if it was not the primary cause.

Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn.1989).

## CAUSATION

■ The defendant first argues that the evidence preponderates against the finding of the trial court that the plaintiff's lung condition arose out of her employment. At the request of the defendant, Dr. David A. Jarvis, a specialist in pulmonary diseases, examined the plaintiff. Based upon her medical records and his examination, Dr. Jarvis concluded that she had a mild case of chronic obstructive pulmonary disease, caused by her lifetime smoking habit, but that she was not permanently disabled. Specifically, Dr. Jarvis testified that her exposure to formaldehyde and particulate matters did not cause or accentuate her condition. "I believe that the overwhelming evidence points to her cigarette smoking as the cause for her very mild asthmatic bronchitis."

Dr. Jarvis's testimony directly contradicts that of Drs. Ray and Stout on the question of causation. The defendant insists that since Dr. Jarvis is a specialist within the area of pulmonary diseases, his testimony should be entitled to more weight than the testimony of an expert with less specialized knowledge, citing Paine, *Tennessee Law of Evidence*, § 178. The plaintiff insists, on the other hand, that opinions of treating physicians should be given greater weight than those of an expert hired solely for purposes of litigation. *A.C. Lawrence Co. v. Loveday*, 224 Tenn. 317, 455 S.W.2d 141 (1970); *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672 (Tenn.1991).

When the medical testimony differs, the trial judge must obviously choose which

view to believe. In doing so, he is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

*Orman v. Williams Sonoma, Inc., supra,* at 676.

In this instance the treating physician, Dr. Ray, had treated the plaintiff over a period of 12 years, and both he and Dr. Stout, the allergy specialist, treated her jointly for one year before concluding that she could not continue in a work environment involving exposure to formaldehyde. The treatment had included medication, pulmonary function studies, hospitalization, and an evaluation of environmental factors which contributed to her condition. The pulmonary function tests were significantly below normal while the plaintiff was working, but showed a marked improvement after she was removed from the work environment. In contrast, defense counsel selected Dr. Jarvis to evaluate the plaintiff on only one occasion after the litigation began.

Considering all of these factors, we find that the evidence does not preponderate against the judgment of the trial court that the opinions of the treating physicians were entitled to greater weight. Consequently, we hold that the plaintiff's lung condition was caused or aggravated by her employment.

## AGGRAVATION OF OCCUPATIONAL DISEASES

■ The defendant next insists that the plaintiff's lung condition is not a compensable occupational disease because it "did not originate from a risk connected with her employment." Publix cites *American Ins. Co. v. Ison,* 519 S.W.2d 778 (Tenn.1975), for the proposition that "there can be no recovery for aggravation of an occupational disease which pre-existed the current employment." *Id.* at 780 (citations omitted). *See also New Jersey Zinc Co. v. Cole,* 532 S.W.2d 246, 250 (Tenn.1975) ("To establish that a disease had its origin and course in a

risk connected with employment ... it should be shown that the disease did not pre-exist that employment....").

The defendant argues that because the plaintiff suffers from the same condition now as before her employment, the aggravation of that condition is not compensable. However, the plaintiff suffered from a minor temporary episode of asthmatic bronchitis on only one occasion before her employment. The permanent condition with which she became afflicted only began to require treatment two years after she began her employment and gradually worsened to the point where frequent hospitalizations were required. When she was removed from the work environment, her condition improved and her medical tests documented that result. Her physicians then recommended that she avoid exposure to formaldehyde in the workplace, and she was forced to leave her employment.

Dr. Ray testified that if the formaldehyde was not the primary cause of her respiratory condition, it aggravated it. The trial judge found her disabling condition arose out of employment. We agree the medical proof demonstrates that her employment either caused the condition, or aggravated a condition which began after the inception of her employment. In either case, the condition is compensable. *See Arnold v. Firestone,* 686 S.W.2d 65 (Tenn. 1984). Therefore, we find that the evidence does not preponderate against the trial court's finding that plaintiff's lung condition arose out of and in the course of employment.

## EXTENT OF VOCATIONAL DISABILITY

■ Finally, the defendant argues that the evidence preponderates against the trial court's award of 60 percent permanent partial disability benefits.

There is no requirement that the trial court fix permanent partial disability solely with reference to expert testimony. Further, the trial court must determine the extent of unscheduled vocational disability by considering many factors, including job skills, education, age, train-

ing, duration of disabilities, anatomical disabilities established by medical experts, and local job opportunities for the disabled.

*Worthington v. Modine Mfg. Co.,* 798 S.W.2d 232, 234 (Tenn.1990).

The trial judge considered the plaintiff's age of 51, her ninth-grade education, her limited job skills, and previous farming and factory work experience. The plaintiff testified that she did not feel she could return to factory work in the presence of lint, dust or chemicals. Dr. Ray restricted her from working around formaldehyde, lint, or other particulate matter, and recommended that she not return to work at the defendant's factory unless her work environment was changed. He testified that formaldehyde is a part of the work environment of most factories in the area, as it was at the defendant's factory. The defendant said that it was impossible to change the work environment, since most of their "piece goods contained the chemical [formaldehyde]," and advised plaintiff they had no job available for her. The plaintiff had applied for and was willing to try work at grocery and discount stores, but had been unemployed for one year at the time of trial. The trial court found that the plaintiff had a strong work ethic and would not have left factory employment unless she was medically required to do so.

Considering the record in its entirety, we find that the evidence does not preponderate against the trial court's award of 60 percent permanent partial disability benefits.

Consequently, the judgment of the trial court is affirmed. Costs are taxed to the defendant/employer.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.